1
2
3
4
5
6
7

# UNITED STATES  DISTRICT COURT

## Northern District of California

### San Francisco Division

CHARLOTTE JOHNSON and NELVIN
JOHNSON,

                         Plaintiffs,

        v.

PNC MORTGAGE, DIVISION OF PNC
BANK, NATIONAL ASSOCIATION; U.S.
BANK, NATIONAL ASSOCIATION; and
DOES 1-10;

                         Defendants.

_____/

No. C 14-02976 LB

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS**

[ECF No. 6]

## INTRODUCTION

Plaintiffs Charlotte and Nelvin Johnson sued PNC Mortgage and U.S. Bank in Napa County
Superior Court based on PNC's conduct in servicing their loan.  They allege that PNC prematurely
revoked a loan modification offer before the offer expired, subjected them to dual tracking, recorded
a notice of default on their property while their loan modification application was pending despite
promising not to do so, failed to appoint a single point of contact to handle their modification, and
executed an invalid "robo-signed" assignment.  *See* Complaint, ECF No. 1 at 5-21.[1]  The Johnsons
assert the following seven claims: (1) breach of contract, (2) dual tracking in violation of California
Civil Code §§ 2924.18 and 2923.55, (3) and (7) two claims for cancellation of instruments under

_____

    [1]  Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-
generated page numbers at the top of the document.

California Civil Code § 3412, (4) breach of contract (promissory estoppel), (5) unfair business practices, and (6) robo-signing in violation of California Civil Code § 2924.12. *See id.* PNC removed the lawsuit to this court pursuant to 28 U.S.C. §§ 1332 and 1441 based on diversity jurisdiction. *See* Notice of Removal, ECF No. 1 at 2. PNC and U.S. Bank now move to dismiss the Johnson's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The court **GRANTS** Defendants' motion on all of Plaintiffs' claims without prejudice.[2]

## STATEMENT

## I. BACKGROUND FACTS

### A. Mr. and Mrs. Johnson's Mortgage

Plaintiffs Nelvin L. Johnson and Charlotte Johnson are joint owners of a 414 Knightsbridge Way, American Canyon, California. Complaint ¶ 1. They are married to each other and are more than 65 years old. *Id.* Defendant PNC Mortgage is a division of PNC Bank, N.A., which is a national banking association with its home office in Delaware and its principal place of business in Pittsburgh, Pennsylvania. *See* Notice of Removal ¶ 3; Complaint ¶ 2. Defendant U.S. Bank, N.A. is a national banking association with its home office in Ohio and principal place of business in Minneapolis, Minnesota. *See* Notice of Removal ¶ 3; Complaint ¶ 2.

On October 28, 2005, Mr. and Mrs. Johnson borrowed $450,000 from Commonwealth United Mortgage ("Commonwealth") as shown by a 10-year interest-only fixed-rate note of the same date. *See* Complaint ¶¶ 4-5.[3] The mortgage was secured by a Deed of Trust in favor of Commonwealth, "under which legal title to the Subject Property would be held by National City Bank of Indiana as Trustee." *Id.* ¶ 4. During all relevant times, PNC has held itself out as the servicer of Mr. and Mrs. Johnson's mortgage. *Id.* ¶ 6. Under the Note, Mr. and Mrs. Johnson's monthly payments were set at $2,437.50 for the first 120 months of the loan and $3,355.08 thereafter. *Id.* ¶ 5.

---

[2] Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument and vacates the September 4, 2014 hearing.

[3] The Complaint also alleges that the mortgage "was originally granted by Plaintiffs to Commonwealth United Mortgage in November 2005." *Id.* ¶ 46. The specific date is not important for this analysis.

UNITED STATES DISTRICT COURT
For the Northern District of California

On January 29, 2013, invoking the Homeowner's Bill of Rights ("HBOR"), Mr. and Mrs. Johnson sent PNC a demand for proof that PNC was the servicer authorized to collect on their loan. *See id.* ¶ 49.  On about April 8, 2013, PNC responded by sending Mr. and Mrs. Johnson several documents.  *See id.* ¶¶ 47-50.  One of the documents was an "un-endorsed certified true and correct copy of the Note."  *Id.* ¶ 47.  Attached to the back of the Note was a "Final Documentation Transmittal" letter that indicates the Note was "intended to be transferred to National City Mortgage Co., for the purposes of securitizing and transferring the Note into an unidentified loan pool."  *Id.*

PNC also sent Mr. and Mrs. Johnson an "Assignment of Deed of Trust" that "recited and sought to transfer Commonwealth United Mortgage's interest in [Mr. and Mrs. Johnson's] Deed of Trust to 'Banc of America Funding Corporation Mortgage Pass-Th[r]ough Certificates, Series 2006-2 U.S. Bank National Association as Trustee, by PNC Bank, National Association as Servicer with delegated authority under the transaction documents.'"  *Id.* ¶ 49.  The assignment was executed by "PNC Bank, National Association, successor by merger to National City Mortgage, a division of National City Bank."  *Id.* ¶ 50.

Mr. and Mrs. Johnson allege on information and belief that Commonwealth (their original mortgage lender) never assigned its interest in the Note or the Deed of Trust to any other entity, including National City Bank of Indiana.  *See id.* ¶¶ 48, 51.  Therefore, PNC lacked "apparent authority to assign the interest of 'National City Bank of Indiana'" and failed to establish that any of the entities on the face of the assignment have an interest in the property.  *Id.* ¶¶ 50, 53.  This means that the assignment is void.  *Id.* ¶ 53.  Mr. and Mrs. Johnson also allege, on information and belief, that the assignment was "robosigned without reliance on competent or reliable evidence to substantiate the right to foreclose, including the borrower's loan status and loan information" in violation of California Civil Code § 2924.17(b).  *See id.* ¶¶ 55-56.  Instead, PNC "had the assignment created in order to create its own evidence, which was knowingly without basis in truth and that PNC did record the assignment illegally."  *Id.* ¶ 56.

### B.  Mr. and Mrs. Johnson's Loan Modification Applications

Mr. and Mrs. Johnson applied for a mortgage modification, which PNC granted in or about May

UNITED STATES DISTRICT COURT
For the Northern District of California

2013.[4]  *See id.* ¶ 8.  PNC had promised that it would negotiate more affordable terms with Mr. and Mrs. Johnson because they had decreased income after they retired.  *Id.*  Because the sole purpose of the modification was to alleviate Mr. and Mrs. Johnson's hardship, they expected the modification would be affordable to them.  *Id.*  Mr. and Mrs. Johnson received a written loan modification offer with an increasing interest rate and monthly payment.  *See id.* ¶ 9.  As modified, the loan balance would be $469,676.27, and the maturity date would be December 1, 2035.  *Id.*  Beginning July 2013, Mr. and Mrs. Johnson would pay $2,161.00 per month with 2% interest.  *Id.*  On July 1, 2016, the interest rate would increase to 3% with $2,364.84 monthly payments.  *Id.*  Finally, in July 2017, the interest rate would increase to 3.75% and the monthly payments to $2,516.98.  *Id.*  PNC promised to keep the offer open until June 12, 2013.  *Id.* ¶¶ 9-10.

At some point before the modification offer expired, Mr. and Mrs. Johnson sent a letter to Defendants asking whether they could negotiate the modification terms because they still could not afford the proposed payments.  *Id.* ¶ 11.  They asked whether they could cap the interest rate at 2.5% or, alternatively, they were willing to extend the payments over a 40 year term.  *Id.* ¶ 11.  Mr. and Mrs. Johnson allege that this would have lowered their monthly payments significantly, while ensuring a higher net benefit to Defendants.  *Id.*

Defendants responded by denying Mr. and Mrs. Johnson's loan modification and rescinding the modification offer, "on the alleged grounds that plaintiffs had rejected the offer by asking for negotiation as promised."  *Id.* ¶ 12.  Mr. and Mrs. Johnson allege that this constitutes a breach of the duty of good faith and fair dealing.  *Id.*  As a result, Mr. and Mrs. Johnson were forced to appeal the rejection of their loan modification application, though their appeal was unsuccessful.  *Id.* ¶ 13.

Around November 2013, Mr. and Mrs. Johnson submitted another complete loan modification application to PNC.  *Id.* ¶¶ 14, 17.  In a letter dated December 4, 2013, PNC acknowledged receiving Mr. and Mrs. Johnson's application and asked to receive additional documents by January 3, 2014.  *Id.* ¶ 18.  The letter stated, "During the MHAP evaluation, the property will not be referred to foreclosure; or be sold at foreclosure sale, if the foreclosure process has already been initiated."

---

[4]  At some point, Mr. and Mrs. Johnson asked for their application to be handled by a single point of contact, but their request was not granted.  *See id.* ¶¶ 39-40.

UNITED STATES DISTRICT COURT
For the Northern District of California

*Id.* (errors in original).

On December 27, 2013, Mr. and Mrs. Johnson sent the additional documentation to PNC via fax to PNC's "Central Receipts – HAMP.MHA PNC MORTGAGE" department at the telephone number provided in the PNC's December 4, 2013 letter.[5]  *Id.*  PNC's receipt was confirmed.  *See id.* ¶ 20.  Nonetheless, on December 30, 2014, PNC recorded a Notice of Default against the Property. *Id.*

Mr. and Mrs. Johnson allege that by recording the NOD before the loan modification process was complete, PNC engaged in illegal dual tracking.  *See id.* ¶¶ 21-23.  They allege that the dual tracking was intentional and "meant to pressure them to waive any right to negotiate the modification terms presented, and that the NOD was filed in retaliation of their appeal and demand to reopen and negotiate the previous, illegally withdrawn modification offer before its expiry date." *Id.* ¶ 23.

Based on statements of PNC's call center agent, Mr. and Mrs. Johnson believe that PNC "has narrowed its loan modification options as of January 1, 2014."  *Id.* ¶ 36.

On January 16, 2014, Mr. and Mrs. Johnson's loan modification application was rejected and closed.  *Id.* ¶¶ 38, 43.  They were not allowed to speak with anyone who was familiar with their prior application, the supplementation, or the bank's mistake.[6]  *Id.* ¶ 43.  Instead, they were instructed to start the loan modification process over again.  *Id.*

Mr. and Mrs. Johnson restarted the loan modification process again on January 16, 2014.  *See id.* ¶ 38.  This delay meant that the banks' consideration of their loan modification "would be on a higher principal balance, and over a shorter amortization period under the original term."  *Id.*

Mr. and Mrs. Johnson requested that their January 2014 application be handled by a single point of contact and expected this would occur, but it did not.  *Id.* ¶¶ 39-40.  A representative named

---

[5]  The Complaint alleges that Mr. and Mrs. Johnson "not only engaged in an act they otherwise would not have, but also incurred the expense of sending the requested documents via overnight mail."  *Id.* ¶ 19.  Except for this reference, the Complaint does not otherwise allege that Mr. and Mrs. Johnson sent the documents via overnight mail.

[6]  They had asked for a single point of contact in connection with their November 2013 loan application.  *Id.* ¶ 39.

Susan was assigned to be their single point of contact. *Id.* ¶ 41. Nonetheless, on January 23, 2014, a representative named Elyssa explained that Mr. and Mrs. Johnson had "a named 'single point of contact, Susan, who works with Elessa, that they are 'ALL single point of contacts', and that any of them can help you." *Id.* ¶ 41 (spelling and punctuation as in original). Between January 23, 2014 and the time they filed their complaint, every time Mr. and Mrs. Johnson called, they reached a different representative. *Id.* "Defendants in fact do not assign individuals or teams, but instead PNC has created a department, called all the reps 'Single Points of Contact', and then continue in operations as like a hotline . . . ." *Id.* ¶ 42.

As a result of PNC's failure to designate a single point of contact, Mr. and Mrs. Johnson received conflicting information, including the following examples. *Id.* ¶ 43. First, at least five times between January and May 2014, Mr. and Mrs. Johnson called PNC, asked to speak with their single point of contact, but were never able to speak with her. *Id.* At least five times[7] between January and May 2014, Mr. and Mrs. Johnson called PNC to discuss what further documentation was needed on their January 2014 loan modification application, and each time they received a different list of necessary documentation. *Id.* Also between January and May 2014, they called PNC at least five times, stated that they do not have any investment income, and explained that they do not own an investment property, only a timeshare that does not provide them with any income. *Id.* During subsequent calls, the representatives "had no recollection, notes, or indication of any familiarity of knowledge of [P]laintiff[]s['] situation in this regard." *Id.*

Around April 2014,[8] Mr. and Mrs. Johnson were approved for a new loan modification. *Id.* This modification provided a higher payment than the previous one. *Id.* In response to Mr. and Mrs. Johnson's inquiries a representative noted that their income had been over calculated by $700, but could not explain that because another representative had not put the notes in the file. *Id.* Moreover, the representative on the call incorrectly assured them that they had a variable rate note,

---

[7] It is unclear whether these are the same conversations referenced in the previous and subsequent sentences.

[8] The Complaint also alleges that Mr. and Mrs. Johnson did not receive another modification offer until about May 2014. *Id.* ¶ 14.

1   and said that the new payment was higher because the interest was being fixed. *Id.* Defendants'

2   failure to designate a single point of contact for their loan modification application caused Plaintiffs

3   to receive less favorable loan terms, incur the cost of multiple overnight mailings, led to the dual

4   tracking of their loan modification application and the foreclosure process, forced them to hire

5   litigation attorneys, led to the wrongful rejection of their November 2013 loan modification

6   application, and forced them to re-apply after new guidelines limited the loan modification programs

7   that were offered. *Id.* ¶ 44.

8   **II. PROCEDURAL HISTORY**

9        On May 22, 2014, Mr. and Mrs. Johnson filed suit in Napa County Superior Court against PNC

10   and U.S. Bank. *See* Complaint, ECF No. 1 at 5. Based on the allegations discussed above, they

11   allege the following seven causes of action: (1) and (4) breach of contract (based respectively on the

12   retraction of the Notice of Default and promissory estoppel),[9] (2) dual tracking in violation of

13   California Civil Code §§ 2924.18 and 2923.55, (3) and (7) two claims for cancellation of

14   instruments under California Civil Code § 3412, (5) unfair business practices based on Defendants'

15   failure to appoint a single point of contact for Plaintiffs, and (6) robo-signing in violation of

16   California Civil Code §§ 2924.12, 2924.17. *Id.* ¶¶ 7-60. They seek the following relief: (1) actual

17   damages, (2) statutory damages of $100,000, (3) an order cancelling the Notice of Default and the

18   Assignment discussed in the Complaint, (4) equitable relief restoring Plaintiffs "to a position

19   equivalent in every way to prior to the breaches, or in the alternative, to require specific performance

20   of the Defendants of their promise to negotiate a loan modification affordable to plaintiffs based

21   initially on the terms of the June 2013 loan modification offer," (5) attorney's fees, (6) costs, and (7)

22   any other relief the court deems just and proper. *See id.* ¶ 57 (requesting attorney's fees), at 20-21.

23        PNC received the summons and complaint on June 3, 2014 and removed the action to this court

24   on June 27, 2014 based on diversity jurisdiction.[10] *See* Notice of Removal, ECF No. 1 at 1. In the

25   _____

26        [9] The first cause of action also alleges that "Defendant" breach the duty of good faith and
27   fair dealing by rescinding its offer. *See* Complaint ¶ 12.

28        [10] The Notice of Removal confirms the allegations in the Complaint, which show that the
     court has diversity jurisdiction under 28 U.S.C. § 1332. The parties are completely diverse.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    Notice of Removal, PNC stated that it believed U.S. Bank had not been served. *Id.* ¶ 6.  On July 7,

2   2014, PNC and U.S. Bank, now represented by the same counsel, file a motion to dismiss.

3   *See* Motion to Dismiss ("Motion"), ECF No. 6.  Mr. and Mrs. Johnson filed a timely opposition

4   brief, *see* Opp'n, ECF No. 12, and Defendants replied, *see* Reply, ECF No. 13.  All parties have

5   consented to the undersigned's jurisdiction.  *See* ECF Nos. 7, 11.

**ANALYSIS**

## I. LEGAL STANDARD

    A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557.).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

    In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff.  *See id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

    If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).  But when a party

---

*See* Notice of Removal, ¶ 3; Complaint ¶¶ 1-3.  The amount in controversy exceeds $75,000.  *See* Notice of Removal ¶ 3; Complaint at 21.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend.  *See*
2   *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where
3   district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim
4   with leave to amend).

5   ## II.  BREACH OF CONTRACT (CLAIM ONE)

6       Defendants first challenge Plaintiffs' breach of contract claim.  They argue that it fails because
7   an offeror has the right to revoke an offer at any time prior to acceptance.  Motion, ECF No. 6 at 6-7.
8   The court agrees.

9       To state a claim for breach of contract, a plaintiff must show the following: (1) a contract
10  existed; (2) the plaintiff performed his duties or was excused from performing his duties under the
11  contract; (3) the defendant breached the contract; and (4) the plaintiff suffered damages as a result of
12  that breach.  *See First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).
13  "Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be
14  pleaded with specificity."  *See Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal. App. 4th 1, 5
15  (2007).[11]

16      To establish the existence of an enforceable contract, a plaintiff need only show "a meeting of
17  the minds upon the essential features of the agreement."  *Lawrence Block Co.*, 123 Cal. App. 2d at
18  308; *see also Krasley v. Superior Court*, 101 Cal. App. 3d 425, 431 (1980) ("The essence of a
19  contract is the meeting of minds on the essential features of the agreement").

20      Here, Mr. and Mrs. Johnson allege that in May 2013, Defendants gave them a written offer to
21  modify their mortgage loan according to specified terms.  Complaint ¶¶ 8-9.  "[D]efendants

---

[11]  "Resolution of contractual claims on a motion to dismiss is proper if the terms of the
contract are unambiguous."  *Monaco v. Bear Sterns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034,
1040 (C.D. Cal. 2008) (citing *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000);
*Westlands Water Dist. v. U.S. Dep't of Interior*, 850 F. Supp. 1388, 1408 (E.D. Cal. 1994)).  "A
contract provision will be considered ambiguous when it is capable of two or more reasonable
interpretations."  *Id.* (citing *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th
854, 867 (1993)).  "An ambiguity may appear on the face of an agreement or extrinsic evidence may
reveal a latent ambiguity."  *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 114
(2007) (citation omitted).

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   promised to keep the offer open" until June 12, 2013.  *Id.* ¶¶ 9-10.  Before the offer expired, they

2   sent Defendants a letter asking whether they could negotiate the terms of the offer and proposed

3   different modification terms.  *Id.* ¶ 11.  In response, Defendants denied Plaintiffs' loan modification

4   request and rescinded the offer.  *Id.* ¶ 12.  Mr. and Mrs. Johnson allege that this constituted a breach

5   of contract and a breach of the duty of good faith and fair dealing.  *Id.*

6        To the extent Plaintiffs' claim is for breach of contract, it fails.  "[U]nder general contract law,

7   an offer may be revoked any time before acceptance.  *Martinez v. Brownco Const. Co., Inc.*, 56 Cal.

8   4th 1014, 1020 (2013) (citing Cal. Civ. Code § 1586 ("A proposal may be revoked at any time

9   before its acceptance is communicated to the proposer, but not afterwards.");  *T. M. Cobb Co. v.*

10  *Superior Court*, 36 Cal. 3d 273, 278 (1984));  *see also Trejo v. Montgomery*, No. CV 13-1657 JVS

11  AJW, 2014 WL 1089071 (C.D. Cal. Mar. 15, 2014).  Mr. and Mrs. Johnson did not accept

12  Defendants' offer, but asked whether they could negotiate more favorable terms.[12]  Accordingly,

13  Defendants had the right to revoke their loan modification offer at any time.  Because Plaintiffs

14  never accepted the offer, there was no contract to breach.

15       In their opposition brief, Mr. and Mrs. Johnson take the position that Defendants' loan

16  modification offer was an option agreement that was supported by consideration, and therefore was

17  irrevocable during the option period.  *See* Opp'n, ECF No. 12 at 2-3.  This argument is not supported

18  by the facts alleged.

19       "An option based on consideration contemplates two separate contracts, i.e., the option contract

20  itself, which for something of value gives to the optionee the irrevocable right to buy under specified

21  terms and conditions, and the mutually enforceable agreement to buy and sell into which the option

22  ripens after it is exercised."  *Steiner v. Thexton*, 48 Cal. 4th 411, 420 (2010) (internal quotation and

23  alterations omitted).  In other words, the option contract must be supported by separate

24  consideration.  "[A]n option without consideration is not binding on either party until exercised;

25  until then, the option is simply a continuing offer which may be revoked at any time."  *Id.* (internal

26  citations omitted).

27  _____

28       [12]  The parties do not argue that Mr. and Mrs. Johnson's request was a rejection followed by
    a counteroffer.

UNITED STATES DISTRICT COURT
For the Northern District of California

Under California law, "good consideration" to support a contract is:

> Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.

Cal. Civ. Code § 1605.  "Generally speaking, a commitment to perform a preexisting contractual obligation has no value.  In contractual parlance, for example, doing or promising to do something one is already legally bound to do cannot constitute the consideration needed to support a binding contract."  *Auerbach v. Great W. Bank*, 74 Cal. App. 4th, 1172, 1185 (1999) (citations omitted).  On the other hand, "[u]nder California law, consideration exists even if the performance due 'consists almost wholly of a performance that is already required and that this performance is the main object of the promisor's desire.  It is enough that some small additional performance is bargained for and given. . . .  [It is sufficient] if the act or forbearance given or promised as consideration differs in any way what was previously due.'"  *Ansanelli v. JP Morgan Chase Bank, N.A.*, No. C 10–03892 WHA, 2011 WL 1134451, at *4 (quoting *House v. Lala*, 214 Cal. App. 2d 238, 243 (1963) (finding that consideration existed where plaintiffs expended time and energy and made financial disclosures in furtherance of the trial loan modification agreement, which they would not have been required to do under the original contract).

While Mr. and Mrs. Johnson allege that Defendants promised not to revoke the contract, they do not allege what they were supposed to do or give in return.  In their opposition brief, they argue that they provided Defendants with financial data and met the modification program requirements.  Opp'n at 2.  But the Complaint does not allege that any of these things were consideration for keeping the option open.  Instead, they were part of the loan application process.  Accordingly, the court dismisses Mr. and Mrs. Johnson breach of contract claim.

If the Complaint was intended to assert a claim for breach of the duty of good faith and fair dealing, that claim also fails.[13]  In the breach of contract claim, the Complaint mentions the duty of

---

[13]  The parties do not squarely address the good faith and fair dealing claim in their briefing.  This may be because the complaint just references good faith and fair dealing in the breach of contract claim.

good faith and fair dealing and says that Defendants violated it by retracting the loan modification offer. *See* Complaint ¶ 12. The covenant of good faith and fair dealing is implied in every contract and prevents one party from "unfairly frustrating the other party's right to receive the benefits" of the contract. *See*, *e.g.*, *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000). To allege a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege the following elements: (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract require him to do or that he was excused from having to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff. *See* Judicial Counsel of California Civil Jury Instructions § 325 (2011); *see also Oculus Innovative Sciences, Inc. v. Nofil Corp.*, No. C 06-01686 SI, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007). Because Mr. and Mrs. Johnson do not allege facts demonstrating the existence of a contract to keep the loan modification offer open, their duty of good faith and fair dealing claim fails. Accordingly, the court grants Defendants' motion to dismiss Mr. and Mrs. Johnson's first claim.

## III. HOMEOWNERS BILL OF RIGHTS CLAIMS

Plaintiffs' remaining claims either allege that Defendants directly violated HBOR (dual tracking and robo-signing) or are causes of action predicated on an HBOR violation (statutory cancellation of instrument, promissory estoppel, and unfair business practices). Defendants move to dismiss each claim.

Generally speaking, HBOR is a California state law that provides protections for homeowners facing foreclosure and reforms some aspects of the foreclosure process. Its purpose is to ensure that homeowners are considered for, and have a meaningful opportunity to obtain, available loss mitigation options such as loan modifications or other alternatives to foreclosure. HBOR provides a private right of action against loan servicers and trustees for their conduct during foreclosure, as well as during the loan modification application submission and review processes, as follows:

> (a) (1) If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2923.10, 2924.11, or 2924.17.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1

2

(2) Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief.

3

4

5

6

7

8

(b) After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2923.10, 2924.11, or 2924.17 by that mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent, the court may award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000).

9

Cal. Civ. Code § 2924.12(a)-(b).[14]

10

**A. Dual Tracking (Claim Two)**

11

12

13

14

Mr. and Mrs. Johnson first allege that Defendants violated HBOR's prohibitions of "dual tracking," which is the practice of pursuing foreclosure proceedings while a borrower's loan modification application is still pending.  *See Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872, 904 (2013).  The Complaint, however, does not state a violation of either statute cited.

15

16

17

18

19

20

21

22

23

24

Mr. and Mrs. Johnson allege that they submitted an initial loan modification application to PNC by May 2013.  *See* Complaint ¶ 8.  That application was denied and their appeal was unsuccessful.  *Id.* ¶¶ 12-13.  They submitted another loan modification application in November 2013.  *Id.* ¶ 17.  In a December 4, 2013 letter, PNC acknowledged receiving their application and stated that while evaluating their application, "the property will not be referred to foreclosure; or be sold at foreclosure sale, if the foreclosure process has already been initiated."  *Id.* ¶ 18.  PNC recorded a notice of default on Mr. and Mrs. Johnson's property on December 30, 2013, while their November 2013 application was pending.  *Id.* ¶ 20. Mr. and Mrs. Johnson allege that this constituted a violation of California Civil Code sections 2924.18 and 2923.55.  *Id.* ¶ 21.  They seek an injunction preventing any foreclosure sale until Defendants comply with HBOR, $50,000 in statutory damages,

25

26

27

28

[14]  A substantially similar provision authorizes a private right of action for material violations of section 2924.18.  *See* Cal. Civ. Code § 2924.19.  As discussed in the context of the dual tracking claim, however, Plaintiffs do not allege facts showing that section 2924.18 (and therefore section 2924.19) is applicable.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    and attorney's fees.

2          First, Mr. and Mrs. Johnson rely on California Civil Code, section 2924.18, which provides, in

3    relevant part:

> (a)(1) If a borrower submits a complete application for a first lien loan modification offered
> by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee,
> beneficiary, or authorized agent shall not record a notice of default, notice of sale, or conduct
> a trustee's sale while the complete first lien loan modification application is pending, and
> until the borrower has been provided with a written determination by the mortgage servicer
> regarding that borrower's eligibility for the requested loan modification.

8    Cal. Civ. Code § 2924.18.  Section 2924.18, however, applies only to entities that have "foreclosed

9    on 175 or fewer residential real properties, containing no more than four dwelling units, that are

10   located in California" in the previous year.  *Id.* § 2924.18(b).  Mr. and Mrs. Johnson do not allege

11   that PNC falls within this limitation.  Accordingly, they have not alleged a violation of section

12   2924.18.

13         Second, Mr. and Mrs. Johnson argue that by recording the notice of default while their

14   November 2013 loan modification application was pending, Defendants violated California Civil

15   Code section 2923.55.  *See* Complaint ¶ 20.  The relevant provision of section 2923.55 requires a

16   loan servicer to comply with California Civil Code section 2923.6(c) before recording a notice of

17   default.[15]  Under 2923.6(c), if a borrower submits a loan modification application, the mortgage

18   servicer must first make a written determination that the borrower is not eligible for a loan

---

[15] In relevant part, the statute provides the following:

> (a) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not
> record a notice of default pursuant to Section 2924 until all of the following:

>> (1) The mortgage servicer has satisfied the requirements of paragraph (1) of
>> subdivision (b).

>> (2) Either 30 days after initial contact is made as required by paragraph (2) of
>> subdivision (b) or 30 days after satisfying the due diligence requirements as
>> described in subdivision (f).

>> (3) The mortgage servicer complies with subdivision (c) of Section 2923.6, if
>> the borrower has provided a complete application as defined in subdivision
>> (h) of Section 2923.6.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   modification before recording a notice of default or conducting a trustee's sale.[16]   As Defendants

2   point out, however, subsection 2923.6(g) provides the following exception to this rule:

> (g) In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, *the mortgage servicer shall not be obligated to evaluate applications from borrowers . . . who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section*, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

7   Cal. Civ. Code § 2923.6(g) (emphasis added).  In other words, if the borrower has previously been

8   reviewed for a loan modification and denied, the servicer does not have to evaluate another

9   application absent a documented, material change in the borrower's financial circumstances.

10      Defendants argue that because they previously had considered Mr. and Mrs. Johnson's May

11   2013 application, subsection g relieved them of the subsection c prohibition on dual tracking.

12   Motion at 7-8.  Plaintiffs appear to concede that 2923.6(g) would have that effect.[17]   *See* Opp'n at 3-

13   5.  Based solely on the arguments presented, the court agrees that Plaintiffs do not state a claim.

14      On this record, Plaintiffs' arguments do not suggest a different result.  Plaintiffs first argue that

15   Defendants' subsection g argument is an affirmative defense that is improper for resolution on a

16   motion to dismiss.  Opp'n at 4.  Ordinarily, affirmative defenses may not be raised in a motion to

17   dismiss.  *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).  There is an exception to this rule

18   where the "'allegations in the complaint suffice to establish the defense.'"  *Sams v. Yahoo! Inc.*, 713

19   F.3d 1175, 1179 (9th Cir. 2013) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)).  Here, the

20   Complaint alleges that Mr. and Mrs. Johnson were evaluated for a loan modification in May 2013.

21

22      [16]  The statute provides in relevant part:  "If a borrower submits a complete application for a

23   first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage

24   servicer . . . or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending."

25

26

27      [17]  The parties appear to assume that section 2923.6(g) can limit Defendants' obligations

28   under section 2923.55(a)(3).  Absent argument by the parties, the court does not consider that legal question, but accepts the parties' assumption (for purposes of this motion only) and addresses only the arguments that the parties make.

Complaint ¶¶ 7-15.  Thus, assuming this is an affirmative defense, it is based entirely on the Complaint's allegations.  The court, therefore, may consider the argument at this stage of the proceedings.

Next, Plaintiffs argue that "for Civil Code § 2923.6[g] to apply, multiple applications must be submitted '*for the purpose of delay.*'"  Opp'n at 4 (emphasis added).  Not so.  Plaintiffs quote the initial clause of the provision, which states the purpose of the limitation (to prevent borrowers from delaying foreclosure through serial modification applications).  The subsequent clause, however, unequivocally provides that "the mortgage servicer shall not be obligated to evaluate applications from borrowers" who have been evaluated (or given a fair opportunity be evaluated) according to the requirements of section 2923.6.

Plaintiffs also argue that they "had no fair opportunity when Defendants revoked their prior offer before its expiry date."  But the Complaint alleges that Plaintiffs were evaluated, approved, and offered a loan modification.  That is more than what the statute requires.

Finally, Plaintiffs argue that Defendants needed to show that Mr. and Mrs. Johnson had no change in financial circumstances in order for subsection g to apply.  Opp'n at 4.  Plaintiffs provide no authority for shifting the burden to Defendants.  Moreover, at least one other court in this district has granted a motion to dismiss in substantially similar circumstances.  *See Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1151 (N.D. Cal. 2013) ("Plaintiffs have not alleged that there was any change in Shahani's financial circumstances after July 2012, or that Shahani notified Defendants of any such change.  Accordingly, the dual tracking and notice provisions contained in § 2923.6 do not apply in this case.  Nor have Plaintiffs made any attempt to address Bank of America and Wells Fargo's argument that § 2923.6(g) bars their § 2924.18 claim.").  In sum, the court grants Defendants' motion to dismiss Plaintiffs' second cause of action.

### B.  Promissory Estoppel (Claim Four)

Plaintiffs also assert a claim for promissory estoppel.  Complaint ¶¶ 32-36.  They allege that they reasonably relied on Defendants' promise not to record a notice of default while their November 2013 modification was pending.  *See id.* ¶ 33.  They seek specific performance; which in this case is rescission of the notice of default.  *Id.* ¶ 34.  They also "seek to have their modification reviewed

UNITED STATES DISTRICT COURT
For the Northern District of California

1  under all programs available as of May 2013," because the modification options currently available

2  are less favorable.  *Id.* ¶ 36.

3      Under California law, "[a] promise which the promisor should reasonably expect to induce

4  action or forbearance on the part of the promisee or a third person and which does induce such

5  action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

6  *See Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000).

7  Promissory estoppel is an equitable doctrine whose remedy may be limited "as justice so requires."

8  *See id.*  The elements of promissory estoppel are: "(1) a clear promise; (2) reasonable and

9  foreseeable reliance by the party to whom the promise is made; (3) injury (meaning, substantial

10  detriment); and (4) damages 'measured by the extent of the obligation assumed and not performed.'"

11  *See Errico v. Pacific Capital Bank, N.A.*, 753 F. Supp. 2d 1034, 1048 (N.D. Cal. 2010) (quoting

12  *Poway Royal Mobilehome Owners Ass'n. v. City of Poway*, 149 Cal. App. 4th 1460, 1470 (2007)).

13      Here, the promise at issue is the statement in PNC's December 4, 2013 letter to Plaintiffs that

14  "During the MHAP evaluation, the property will not be referred to foreclosure; or be sold at

15  foreclosure sale, if the foreclosure process has already been initiated."  Complaint ¶¶ 18, 33.[18]  This

16  claim fails because Plaintiffs do not plausibly allege that PNC breached any promises.  Plaintiffs do

17  not allege that PNC referred the property to foreclosure or sold it at foreclosure while the November

18  2013 application was pending.  Instead, they allege that Defendants recorded a notice of default on

19  the property.  Plaintiffs do not argue (or allege) that recording a notice of default is the same as

20  referring a property to foreclosure.  Accordingly, there is no broken promise for the court to enforce,

21  and the court dismisses this claim.

22

23

24

25

26      [18]  In paragraph 33 of the Complaint, Plaintiffs allege that the promise was "not to record a

27  notice of default during the pendency of their November 2013 modification application as more specifically pleaded at ¶ 25."  Complaint ¶ 33.  The reference to paragraph 25 appears to be a typo.

28  Instead, paragraph 33 appears to refer to the promise alleged in paragraph 18, which is the subject of the parties' briefing.

1    **C. UCL Claim (Claim Five)**

2    Plaintiffs' next cause of action is for "unfair business practices"[19] based on Defendants' failure to

3    appoint a single point of contact, as required by California Civil Code.  *See* Complaint ¶¶ 37-44.

4    Defendants move to dismiss the claim for lack of standing and failure to allege the violation of a

5    predicate law that would give rise to a UCL claim.  *See* Motion at 9-10.  The court grants the motion

6    to dismiss.

7    The UCL prohibits "unfair competition," which is defined as any "unlawful, unfair or fraudulent

8    business act or practice."  Cal. Bus. & Prof. Code § 17200.  "'Section 17200 'borrows' violations of

9    other laws and treats them as unlawful practices that the unfair competition law makes

10   independently actionable." *Cel–Tech Comm, Inc. v. Los Angeles Cellular Tel. Co*, 20 Cal. 4th 163,

11   180 (1999); *see Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1361 (2010) ("Virtually any

12   law – federal, state or local – can serve as a predicate for an action under . . . section 17200.")

13   (internal quotation marks and citations omitted); *Saunders v. Superior Court*, 27 Cal. App. 4th 832,

14   838–39 (1994) (where a business act or practice violates any law, that violation is actionable under

15   the UCL, regardless of whether the predicate law itself contains a private right of action).  To state a

16   claim based on an unlawful business act or practice, a plaintiff must allege facts sufficient to show a

17   violation of some underlying law.  *People v. McKale*, 25 Cal. 3d 626, 635 (1979); *see People ex rel.*

18   *Harris v. Pac Anchor Transp., Inc.*, 195 Cal. App. 4th 765, 773 (2011) ("An 'unlawful' business

19   practice or act within the meaning of the UCL 'is an act or practice, committed pursuant to business

20   activity, that is at the same time forbidden by law.' ").

21   To establish standing under the UCL, a plaintiff must "(1) establish a loss or deprivation of

22   money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that that

23   economic injury was the result of, i.e., *caused by,* the [unfair competition] . . . ."  *Kwikset Corp. v.*

24   *Superior Court*, 51 Cal. 4th 310, 322 (2011) (emphasis in original); *see* Cal. Bus. & Prof. Code

25

26

27   [19] Although the Complaint fails to specifically identify the right of action for the unfair
     business practices claim, Defendants analyze the claim under California's Unfair Competition Law

28   ("UCL"), Cal. Bus. & Prof. Code § 17200, and Plaintiffs do not dispute this.  *Compare* Motion at 9-
     10, *with* Opp'n at 6-7.  The court analyzes the claim under the UCL as well.

UNITED STATES DISTRICT COURT
For the Northern District of California

§ 17204.

Mr. and Mrs. Johnson's UCL claim is predicated on a violation of California Civil Code section 2923.7,[20] which provides that upon a borrower's request for a foreclosure prevention alternative, the servicer must promptly designate a point of contact to communicate directly with the borrower.  Cal. Civ. Code § 2923.7(a).  The "single point of contact" can be an individual or a team, *id.* § 2923.7(e), but must possess sufficient knowledge about foreclosure alternatives, and must have access to individuals who have the ability and authority to stop foreclosure proceedings,  *id.* § 2923.7(b).

Here, Plaintiffs lack standing to assert a section 2923.7 violation because they have not alleged facts establishing an economic injury that was caused by Defendants' failure to abide by the statute, *i.e.*, that they lost money or property as a result of Defendants' unlawful business practice.  Plaintiffs allege that they requested a single point of contact in connection with all three of their loan

---

[20]  The relevant code provisions provide as follows:

(a) Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.

(b) The single point of contact shall be responsible for doing all of the following:

(1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.

(2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.

(3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.

(4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.

(5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

UNITED STATES DISTRICT COURT
For the Northern District of California

modification applications.  *See* Complaint ¶ 39.  When their November 2013 application was rejected and closed on January 16, 2014, they were not able to speak with anyone familiar with their case.  *Id.* ¶ 43.  In connection with their January 2014 application, Plaintiffs were told that a representative named Susan would be their single point of contact, but they were not able to reach Susan again.  *Id.* ¶ 41.  Instead, Defendants designated an entire department as "single point of contacts."  *Id.* ¶¶ 41-43.  Finally, the representatives Plaintiffs spoke with provided them with inconsistent information regarding documentation required to complete their January 2014 application and were unfamiliar with their case.  *Id.* ¶ 43.  Plaintiffs allege that the failure to appoint a single point of contact led to the rejection of their June and November 2013 modification applications, caused them to pay for multiple overnight mailings, led to their being subjected to dual tracking, and caused delays in obtaining a loan modification, which forced them to pay increased interest and late fees.  *Id.* ¶ 44.

The problem with Plaintiffs' claim is that there is no logical connection between the alleged failure to appoint a single point of contact and these damages.  Instead, Plaintiffs appear to speculate that a single point of contact would somehow have caused PNC to grant their applications or saved them the cost of overnight mailings.  That is pure speculation and does not establish causation.

In response to Defendants' arguments on this point, *see* Motion at 9-10, Plaintiffs argue that they have plausibly alleged they were damaged, Opp'n at 6-7 (citing Complaint ¶¶ 43(d)-(f), 44).  As with their complaint, Plaintiffs' opposition brief fails to logically connect these damages to the alleged HBOR violation.  Their entire causation argument is the following:  "Plaintiffs have not only established plausible damages that they suffered, but they have also established plausible damages that likely hundreds if not thousands more of PNC's borrower[]s likely have faced in dealing with the lender who has failed to comply with the single point of contact requirement of the HBOR."  *Id.*  But merely claiming to have alleged causation does not make it so.  Because Plaintiffs have not established that their alleged injuries were caused by a section 2923.7 violation, they lack standing to assert this claim and the court grants the motion to dismiss it.[21]

---

[21]  Because standing is a threshold issue, the court does not reach the question of whether Defendants violated section 2923.7.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

### D. Robo-signing (Claim Six)

Plaintiffs' sixth claim is for violation of California Civil Code section 2924.17, which requires a mortgage servicer to "ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information" before the mortgage servicer serves a notice of default, notice of sale, assignment of a deed or trust, or substitution of trustee.[22]  Section 2924.17 is designed to prevent "robo-signing." *See Marquez v. Wells Fargo Bank*, *N.A.,* No. 13–2819, 2013 WL 5141689 (N.D. Cal. Sept. 13, 2013) ("Section 2924.17 prohibits the practice of robo-signing, in which servicers sign foreclosure documents without determining the right to foreclose."); *Sanguinetti v. CitiMortgage, Inc.*, No. 12–5424, 2013 WL 4838765 (N.D. Cal. Sept. 11, 2013) ("Section 2924.17 prohibits 'robo-signing,' or executing foreclosure documents without 'substantiat[ing] the borrower's default and the right to foreclose.'"); *Hosseini v. Wells Fargo Bank*, *N.A.,* No. 13–2066, 2013 WL 4279632 (N.D. Cal. Aug. 9, 2013) ("Section 2924.17(b) prohibits the practice of 'robo-signing,' in which mortgage servicers execute foreclosure documents without 'substantiat[ing] the borrower's default and the right to foreclose.'").

As discussed above, Plaintiffs' claim is brought under California Civil Code section 2924.12. *See* Complaint at 17.[23]  Under section 2924.12, if a trustee's deed upon sale has not been recorded a

---

[22]  In relevant part, California Civil Code section 2924.17 states the following:

(a) A declaration recorded pursuant to Section 2923.5 or, until January 1, 2018, pursuant to Section 2923.55, a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence.

(b) Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

[23]  Plaintiffs also mention California Civil Code section 2924.19 as the applicable cause of action. *See* Complaint ¶ 57.  As discussed above, they fail to allege facts demonstrating that section

1    borrower may bring an action for injunctive relief to enjoin a material violation of section 2924.17

2    (the robo-signing statute).  Cal. Civ. Code § 2924.12(a).  Actual and statutory damages are only

3    available after a trustee's deed upon sale has been recorded.  *Id.* § 2924.12(b).  In either case, the

4    court may award a prevailing borrower reasonable attorney's fees and costs.  *Id.* § 2924.12(i).

5        Plaintiffs allege that PNC executed an assignment of their deed of trust that purported to transfer

6    "Commonwealth United Mortgage's interest in their Deed of Trust to 'Banc of America Funding

7    Corporation Mortgage Pass-Through Certificates, Series 2006-2 U.S. Bank National Association as

8    Trustee."  Complaint ¶ 49.  In the assignment PNC identified itself as "Servicer with delegated

9    authority under the transaction documents" and executed the assignment as "PNC Bank, National

10   Association, successor by merger to National City Mortgage, a division of National City Bank."  *Id.*

11   ¶¶ 49-50.  Plaintiffs allege, on information and belief the following: (1) Commonwealth, the original

12   lender, never assigned its interest in their note or deed of trust to any other entity,  *id.* ¶ 48, (2) PNC

13   executed the assignment without reviewing competent and reliable evidence as required by section

14   2924.17(b), *id.* ¶ 56, and (3) PNC "had the assignment created in order to create its own evidence,"

15   *id.*

16       Defendants move to dismiss, arguing that this claim is unsubstantiated and insufficiently material

17   to constitute an actionable HBOR violation.  Motion at 10-11.  The court agrees.

18       First, Plaintiffs' robo-signing theory lacks factual support.  District courts have routinely held

19   that conclusory robo-signing allegations are insufficient without some factual support.  *See Baldoza*

20   *v. Bank of America, N.A.*, No. C 12-05966 JCS, 2013 WL 978268, at *13 (N.D. Cal. Mar. 12, 2013);

21   *see also Chan Tang v. Bank of America, N.A.*, No. SACV 11-2048 DOC (DTBx), 2012 WL 960373,

22   at *10-11 (C.D. Cal. Mar. 19, 2012); *Sohal v. Fed. Home Loan Mortg. Corp.*, No. C 11-01941 JSW,

23   2011 WL 3842195, at *5 (N.D. Cal. Aug. 30, 2011); *Chua v. IB Property Holdings, LLC*, No. CV

24   11-05894 DDP (Spx), 2011 WL 3322884, at *2 (C.D. Cal. Aug. 1, 2011)).  Here, Plaintiffs allege

25   facts regarding the contents of an assignment that PNC executed.  But the critical allegations – that

26   Commonwealth never assigned its interest to any party to the assignment and that PNC "robosigned"

27

28

2924.19 applies.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

the assignment – are made entirely on information and belief.  *See* Complaint ¶¶ 48, 56.

Defendants also argue that even assuming they violated the statute, the violation was not material.  *See* Motion at 11.  That is because assignment of a deed of trust does not affect the right to enforce the deed of trust through foreclosure.  *See, e.g., Haynes v. EMC Mortg. Corp.*, 205 Cal. App. 4th 329, 336 (2012).  Rather, "a deed of trust passes legal title to the trustee, thus enabling him in executing the trust to transfer to the purchaser a marketable record title."  *Id.* at 336-37 (internal quotations omitted).  Thus, even if Plaintiffs were correct, and the assignment was a sham, the assignment would not have changed their payment obligations.  It would have affected the lender and notice to future encumbrancers and purchasers (not Plaintiffs).  *See Nan Hui Chen v. Deutsche Bank National Trust Co.*, No. C 13-3352 YGR, 2014 WL 2738071, at *7 (N.D. Cal. June 9, 2014).  The court might reach a different result if, for example, Plaintiffs contested the validity of the underlying debt or were a party to the assignment.  *Accord Elliott v. Mortgage Electronic Registration Systems, Inc.*, No. 12-cv-4370 YGR, 2013 WL 1820904, at *2 (N.D. Cal. Apr. 30, 2013); *Javaheri v. JPMorgan Chase Bank N.A.*, No. 2:10-cv-08185-ODW (FFMx), 2012 WL 3426278, at *6 (C.D. Cal. Aug. 13, 2012).  On this record, however, the court finds that even if there were a violation, it was immaterial.

In opposition, Plaintiffs argue that recording a false assignment of the deed of trust is material because "the Deed of Trust contains the all-important power of sale."  Opp'n at 7.  But as discussed in *Haynes*, that is not the case.  Accordingly, the court grants the motion to dismiss.[24]

**E.  Cancellation of Instruments (Claims Three and Seven)**

The final issue is whether Plaintiffs sufficiently pleaded their third and seventh claims, which seek cancellation of the December 30, 2013 Notice of Default and the assignment of the Deed of Trust discussed in the robo-signing claim.  *See* Complaint ¶¶ 26-31, 58-60**.**  Defendants move to dismiss these claims as predicated on Plaintiffs' flawed dual tracking and robo-signing claims.  *See*

---

[24]  Should Plaintiffs choose to re-allege these claims in an amended complaint, they also should remedy their failure to allege that the assignment was recorded "in connection with a foreclosure" as required for liability under 2924.17.  More fundamentally, the court notes that section 2924.17 became effective on January 1, 2013, and the facts of the case suggest the assignment occurred earlier than that.  *See* Cal. Civ. Code § 2924.17.

1  Motion at 11-12.

2  "The Court may order cancellation of an invalid written instrument that is void or voidable."

3  *Nan Hui Chen*, 2014 WL 2738071, at *5 (citing *Compass Bank v. Petersen*, 886 F. Supp. 2d 1186,

4  1194 (C.D. Cal. 2012)); *see also* Cal. Civ. Code § 3412.  Under California law, "[a] written

5  instrument, in respect to which there is a reasonable apprehension that if left outstanding it may

6  cause serious injury to a person against whom it is void or voidable, may, upon his application, be so

7  adjudged, and ordered to be delivered up or canceled."  Cal. Civ. Code § 3412.

8  With regard to the notice of default, the Complaint alleges that it is subject to cancellation solely

9  because Defendants violated California Civil Code § 2923.55 (which references the dual tracking

10  statute).  *See* Complaint ¶¶ 28-31.  This claim, therefore, fails for the same reasons as the dual

11  tracking claim.

12  Similarly, Plaintiffs seek cancellation of the allegedly "robosigned Assignment," *id.* ¶ 59, for the

13  reasons discussed in the robo-signing claim, *see* Complaint ¶¶ 58-60.  As discussed above, Plaintiffs

14  have not alleged a statutory violation.  Even if they had, Plaintiffs provide no authority for finding

15  the assignment void or voidable on that basis.  *See* Cal. Civ. Code §§ 2924.12 (authorizing

16  borrowers to sue for injunctive relief and, in some cases, treble actual or statutory damages).

17  In opposition, Plaintiffs distinguish the facts in *Nan Hui Chen*, but they do not dispute the court's

18  legal reasoning.  There, the court held that Nan Hui Chen did not allege a risk of "serious injury"

19  based on an improperly executed assignment.  *See* 2014 WL 2738071, at *7.  "[E]ven assuming that

20  there was a deficiency in the assignment," she conceded that she owed money on her mortgage

21  obligation and her obligations under the note remained unchanged.  *Id.*  That is precisely the

22  situation here.  In any event, Plaintiffs' robo-signing claim fails on several independent grounds.

23  *See supra* n.22.  Accordingly, the court dismisses Plaintiffs' third and seventh claims for

24  cancellation of instruments.

**CONCLUSION**

25

26  The Court **GRANTS** Defendant's Motion to Dismiss, ECF No. 6.  Mr. and Mrs. Johnson's

27  claims are dismissed without prejudice.  They may file an amended complaint within 28 days.

28  This disposes of ECF No. 6.

1    **IT IS SO ORDERED.**

2    Dated: August 12, 2014

3                                                    _____
                                                     LAUREL BEELER
4                                                    U.S. Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California