Michael Patrick Rooney, Esq. (248491)
MICHAEL ROONEY LAW OFFICE, P.C.
580 California Street FL 16
San Francisco, CA 94104
Telephone: (415) 533-0282
Facsimile: (415) 704-3321

Attorney for Plaintiffs CHARLOTTE AND NELVIN JOHNSON

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLOTTE JOHNSON and NELVIN JOHNSON,<br><br>        Plaintiffs,<br><br>   v.<br><br>PNC MORTGAGE, division of PNC Bank, National Association, U.S. BANK, National Association, and DOES 1-10.<br><br>        Defendants. | Case No.: 3:14-cv-02976-LB<br><br>**OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date: February 5, 2015<br>Time: 9:30 A.M.<br>Place: Courtroom C |

## I. INTRODUCTION

Pursuant to the court's order granting dismissal with leave to amend as to the First Amended Complaint on 11/21/2014, Plaintiffs amended their complaint accordingly and filed the Second Amended Complaint on 12/11/2014. It states causes of action for negligence, unfair business practices, and cancellation of instruments on the following bases: First) that Defendant mishandled Plaintiffs' loan modification application; Second) Defendants failed to establish an appropriate single point of contact under Civil Code §2923.7; and Third) Defendants recorded void documents on plaintiffs' title, creating a reasonable apprehension of serious injury. Defendants filed a motion to dismiss the Second Amended Complaint on December 30, 2014, based upon arguments that defendants owe plaintiffs no duty of care in processing their loan modification application, that plaintiffs allegations of damages somehow are not allegations of damages, that the Second Amended Complaint alleged compliance with the single point of contact requirement of the homeowners bill

of rights and the alleged violation of the same did not cause plaintiff damages, and finally that the admittedly robosigned instruments can not cause plaintiffs injury. Plaintiffs oppose the motion in its entirety, as more fully stated below.

## II. PLAINTIFFS STATED A VALID CLAIM FOR NEGLIGENCE.

In their second amended complaint, plaintiffs allege that they submitted a complete loan modification application, and that PNC negligently processed their application by overcalculating their monthly gross income, which resulted in an unaffordable monthly payment on their loan modification under the established processing guidelines (the "waterfall"). Plaintiffs alleged that the failure in care of processing their application resulted in damages of approximately $200 per month more in payments than they would have been otherwise but for Defendant's negligence in calculating their income, with such figure increasing over time annually despite plaintiffs' imminent retirement, additional income tax liability, costs and expenses incurred to prevent or fight foreclosure, and other damages. In support of their motion to dismiss, Defendants argue contrary to California law that they owe plaintiffs no duty of care to handle their loan modification properly.

The seminal case on this issue is *Alvarez v. BAC Home Loan Servicing* (2014) 228 Cal.App. 4th 941. There, the court examined and affirmed settled case law holding that banks do not owe borrowers a duty of care in their customary relationship, such as that cited by Defendants in support at 3::3-3:11 (*Nymark* and progeny). However, after considering the special circumstances that exist with home loan modifications, the Court of Appeals held that a lender does owe a duty of care when processing a mortgage modification application. *Alvarez, supra.*

In defendants' brief in support, *Alvarez* is reduced to a mere citation, and only then in the context of other, red herring arguments. Defendant argues that lenders owe no duty to offer borrowers loan modifications in the first place and that lenders owe borrowers no duty to service a loan with care. However, defendant's brief fails to establish that, after *Alvarez,* lenders owe borrowers no duty to handle a loan modification with care.

These arguments fail because plaintiffs are not alleging that defendants had a duty to offer them a modification or to service the loan with care.  Rather, plaintiffs state a duty to handle their modification properly.  Under *Alvarez*, this duty arises because of the special relationship formed therein.  As explained in section 315 of the Restatement Second of Torts, "a duty of care may arise from either (a) a special relation ... between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation ... between the actor and the other which gives to the other a right of protection." (*Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 435) *Alvarez* supports the finding that a duty to handle a modification application with care exists because defendants undertake the consideration of the modificaiton in the first place, which is consistent with common law principles. Accord *Artiglio v. Corning, Inc.* (1998), 18 Cal. 14th 607 ["Thus, it is settled law that one "who, having no initial duty to do so, undertakes to come to the aid of another-the 'good Samaritan' "-has "a duty to exercise due care in performance and is liable if (a) his failure to exercise care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." (Williams v. State of California (1983) 34 Cal. 3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137], citing Rest.2d Torts, § 323; see, e.g., Coffee v. McDonnell-Douglas Corp. (1972) 8 Cal. 3d 551, 557 [105 Cal.Rptr. 358, 503 P.2d 1366] [same]; see also BAJI No. 4.45 ["A person who is under no duty to care for or render service to another but who voluntarily assumes such a duty, is liable to the other for injury caused by a failure to exercise ordinary or reasonable care in the performance of that assumed duty."].)"].

Therefore, Defendants have not successfully argued that there is no duty of reasonable care owed by a lender to a borrower when handling a loan modification application under *Alvarez*.  Even *Lueras,* which defendants present as authority for the proposition that no duty exists with regard to a modification, makes no such finding.  Rather, *Lueras* holds that "Bank of America and ReconTrust did not have a common law duty of care to offer, consider, or approve a loan modification, or to offer Lueras alternatives to foreclosure. Likewise, Bank of America and ReconTrust did not have a duty

of care to handle Lueras's loan "in such a way to prevent foreclosure and forfeiture of his property.". *Lueras v. BAC Home Loans Servicing, L.P. et al.*, 221Cal.App.4th 49, 68. While these statements may be true, they are inapplicable to the case at bar. Moreover, they are not at all inconsistent with the holding in *Alvarez*, which applies where, as here, plaintiff alleges that once Defendants undertook the processing and handling of the loan modification application, they exceeded their traditional role as lender, and thereby had a duty to process the application with reasonable care.

*Alvarez* has been followed state-wide by both superior courts and the courts of appeal. See: *Segura v. Wells Fargo Bank, N.A.*, 2014 WL 4798890 (C.D. Cal. Sept. 26, 2014) [Negligence claims require a duty of care owed from servicer to borrower. Generally, banks owe no duty to borrowers within a typical lender-borrower relationship. A recently published Court of Appeal decision, Alvarez v. BAC Home Loans Servicing, 228 Cal. App. 4th 941 (2014) found that while servicers have no duty to initiate the modification process or to grant a modification, once they agree to negotiate a modification they owe a duty to borrowers not to mishandle that process. This court agreed with the reasoning in Alvarez. Here, servicer agreed to accept and process borrowers' loan modification application and to assign them a SPOC. Consequently, servicer was obligated to handle borrowers' application with "reasonable care." The court took care to clarify that this duty is a general duty only to provide a baseline of care. The court then found that here, servicer failed to provide that minimum standard of care and borrowers' negligence claim survived the MTD.]; *Leonard v. JP Morgan Chase*, No. 34-2014-00159785-CU-OR-GDS (Cal. Super. Ct. Sacramento Cnty. Oct. 21, 2014) (attached): Negligence per se is a rule of evidence, not a cause of action. Nevertheless, borrowers successfully pled a negligence per se claim, which the court re-framed as a negligence claim. The court cited Lueras and Alvarez to support its finding that borrowers had adequately alleged a duty of care because servicer agreed to consider borrower's modification application and borrower was in the middle of a review when servicer continued with the foreclosure process. "Such a duty [and breach] is supported by [HBOR]." The court also agreed that borrower had adequately pled damages to support his negligence claim by citing "'excessive interest accumulation,

negative amortization, loss of equity, destruction of credit standing.'" Borrower's default does not insulate a servicer from negligence liability related to servicer's handling of the loan modification application. Servicer's demurrer was overruled.]; *Shapiro v. Sage Point Lender Servs.*, 2014 WL 5419721 (C.D. Cal. Oct. 24, 2014) [Negligence claims require a duty of care owed from servicer to borrower. Generally, banks owe no duty to borrowers within a typical lender-borrower relationship. A recently published Court of Appeal decision, Alvarez v. BAC Home Loans Servicing, 228 Cal. App. 4th 941 (2014) found that while servicers have no duty to initiate the modification process or to grant a modification, once they agree to negotiate a modification they owe a duty to borrowers not to mishandle that process. This court agreed with Alvarez. Because borrower was told contradictory information after he submitted his application (that documents were missing and that this assertion should be ignored), and was not told what documents were missing, the court inferred that servicer mishandled the application and "deprived [borrower] of an opportunity to obtain a loan modification, and thereby avoid foreclosure." The court denied servicer's MTD borrower's negligence claim.]; *Banks v. JP Morgan Chase*, 2014 WL 6476139 (C.D. Cal. Nov. 19, 2014) [Negligence claims require servicers to owe borrowers a duty of care, which servicer then breaches. This court considered the most recent negligence jurisprudence in state and federal court and concluded: Taken together, these cases establish that traditional money-lending activity does not create a duty of care (Nymark), and that loan modification is generally deemed a traditional money-lending activity (Lueras). They also support the conclusion that servicer conduct during the modification negotiation process may create a special relationship and a resulting duty of care (Alvarez).]

     Defendants finally argue that plaintiff's higher monthly payment of $200.00 per month over what is affordable is not damages, but the motion fails because defendants fail to address plaintiff's *other* alleged damages, which defendants have accepted as true by filing a motion to dismiss.  Defendant's failure to establish arguments against each alleged damage renders a 12(b)(6) motion defective, as it fails to establish a complete defense.

5
OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT

1811579.2

Moreover, a higher monthly payment than what is affordable, as plaintiffs alleged, was a violation of the duty of good faith and fair dealing once defendants undertook loan modification review because the purpose of the application was to achieve an affordable payment.  By over-stating plaintiffs' gross income, which as alleged in the Second Amended Complaint has a direct causal effect on the calculation of their modified payments, in a transaction meant to assist plaintiffs to have an affordable payment, defendants cause damage to plaintiffs on a monthly basis to the extent that the payment is unaffordable to them.  Civil Code 3333 and the common law provide that damages from negligence are "the amount which will compensate for *all the detriment* proximately caused thereby, whether it could have been anticipated or not." *Id.* [Emphasis added.]

Finally, simply because plaintiffs owe some money, *on some terms*, does not mean defendant's mishandling of the modification application intended to result in affordable terms, cannot result in damage to plaintiffs. "Plaintiff may recover to the full extent that his condition has worsened as a result of defendant's tortious act." (*Ng v. Hudson* (1977) 75 Cal.App.3d 250, 255 [142 Cal.Rptr. 69], internal citations omitted, overruled on another ground in *Soule v. General Motors* (1994) 8 Cal.4th 548, 574 [34 Cal.Rptr.2d 607, 882 P.2d 298].)

*Alvarez's* rationale has been tested and stands as good law. Plaintiffs adequately stated that the breach of Defendants duty to process their modification application with care caused them damages. The court should follow it here and DENY defendants' motion.

III. **PLAINTIFFS CLAIM FOR UNFAIR BUSINESS PRACTICES STATES GROUNDS FOR RELIEF, AND DEFENDANTS' MOTION SHOULD BE DENIED.** .

Plaintiffs plead under Business and Professions Code §17200 that defendants violated the law, causing them damages, and ask the court for an injunction to help similarly situated homeowners, attorney's fees, and costs of suit.

Defendants argue that they complied simply because there were agents who identified themselves as SPOC's (at their Memorandum 5:22-25), they were compliant with the statute. However, at paragraph 28, which the Defendants ask the court to accept, plaintiffs allege

"…Defendants do not in fact assign individuals or teams, but instead PNC has created a department, called the reps "Single Points of Contact", and then continue operations like a hotline, in which a consumer's single point of contact is in fact not a true single point of contact because they do not have the knowledge or information necessarily available to them to perform the function as required by the Homeowner's Bill of Rights." Therefore, this argument fails. If defendants wish to challenge the truth of the allegations, they must ANSWER, not claim that the allegations do not say what is clearly printed in black and white.

Under Civil Code § 2923.7(a), (e). defendants' single points of contact must have sufficient knowledge of the status of their modification. The court in its prior order found that the problem with this claim was not lack of allegations that their SPOC's did not meet this requirement, but that the court could not see the damages therefrom. As alleged above in the negligence cause of action, it was this very violation which led to the mishandling of their appeal of their denial, as well as the due processing and handling of the modification application. See Jenkins v. JP Morgan Chase Bank, N.A. (2013) 216 Cal.App.4th 497, 521-522. Specifically, to have standing, the individual plaintiff must show both (1) economic injury and (2) that the economic injury was caused by the defendant's wrongful conduct. Id. at 522-23. In Paragraphs 30-33 of the Second Amended Complaint, plaintiffs have clarified their allegations of causation and damages as required for this cause of action, and the motion should be DENIED.

**IV.   PLAINTIFFS STATE A VALID CLAIM FOR CANCELLATION OF INSTRUMENT.**

In their third cause of action, plaintiffs alleged that Defendants robosigned a notice of default and assignment of deed of trust. Defendants ask the court to accept those allegations as true and argue that the notice of default is not void or voidable because defendants do not dispute that they defaulted and that the Assignment cannot harm the plaintiffs.

Yet, these arguments could not be further from the truth. Plaintiffs, pursuant to the court's

1  request in its ORDER allowing amendment, painstakingly pled facts and well-settled legal
2  authorities establishing that defendants had no right to record either of these, nor any other
3  instrument on Plaintiffs' title.  The notice of default causes plaintiffs injury because it is a public
4  record and continues to ruin their credit.

5        Moreover, defendants argue that the robosigned assignment of deed of trust cannot injure
6  plaintiffs because it doesn't affect their obligation to pay. However, this is not the only reasonable
7  apprehension contemplated by Civil Code §3412 neither do defendant's authorities support such
8  limitation of the statute.  Defendants' arguments regarding plaintiff's payment obligation at 7:21-8:4
9  simply fail to address the claim plaintiffs have alleged.  Plaintiffs have alleged that they are legally
10 superior titleholders, and that defendants trespass on their title with void, robosigned instruments,
11 causes them reasonable apprehension of serious injury, thereby invoking application of Civil Code
12 §3412.

13       ALL of defendant's alleged substantive rights with regard to Plaintiffs' house arise from that
14 instrument. As plaintiff's alleged in 36-43, Defendant's robosigned instrument is a public record
15 which induces others to believe that defendants have substantive rights – including the power of sale
16 – which they do not truly have. (As stated in SAC paragraphs 54-58).  Further, Plaintiffs clearly
17 stated at paragraph 63 that the apprehension is reasonable under the California common law, because
18 of the risk of the application of the doctrine of *Bona Fide* Purchaser.

19 **V.  CONCLUSION**
20       Plaintiffs stated valid causes of action and defendants' motion should be DENIED.

23 Date: January 13, 2015                        MICHAEL ROONEY LAW OFFICE

25                                     By: /s/ Michael P. Rooney (SBN 248491)
26                                         MICHAEL PATRICK ROONEY
                                        Attorney for Plaintiffs