1

2

3

4

5

6

7

8    UNITED STATES DISTRICT COURT

9    NORTHERN DISTRICT OF CALIFORNIA

10    San Francisco Division

11

12    CHARLOTTE JOHNSON, et al.,                    Case No.  14-cv-02976-LB

              Plaintiffs,

13

14        v.                                        **ORDER ON MOTION TO DISMISS
                                                     SECOND AMENDED COMPLAINT**
    PNC MORTGAGE, et al.,
15                                                   [ECF No. 32]
              Defendants.

16

17                                             **INTRODUCTION**

18        This case involves a residential mortgage loan. Plaintiffs Charlotte and Nelvin Johnson allege

19    that, in handling their requests for a loan modification, the defendants violated California's

20    Homeowner Bill of Rights.

21        The Johnsons sued PNC Mortgage and U.S. Bank in Napa County Superior Court. (Compl. –

22    ECF No. 1 at 5-21.)[1] PNC removed the case to this court based on diversity jurisdiction. (ECF No.

23    1 at 1.) (When it removed the case, PNC was the only defendant that had been served. (*See* ECF

24    No. 1 at 2 (¶ 6)); 28 U.S.C. § 1446(b)(2)(A).) All parties have consented to the undersigned's

25    jurisdiction. (ECF Nos. 7, 11.)

26

27    _____

28    [1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to
    the ECF-generated page numbers at the top of the documents.

1    The operative complaint is the Second Amended Complaint. (ECF No. 30.) The Johnsons there

2    advance three claims: 1) negligence; 2) unfair business practices under California Civil Code

3    §§ 2923.7 and 17200; and 4) statutory cancellation of instruments under California Civil Code

4    § 3214. (ECF No. 30, *passim*.)

5        This is the third time the defendants have moved to dismiss the Johnsons' claims. The court

6    granted the defendants' previous motions to dismiss and (except for a statutory-damages claim

7    under Cal. Civ. Code § 2924.19) gave the Johnsons leave to amend their complaint. (*See* ECF Nos.

8    14, 29.) On December 30, 2014, PNC and U.S. Bank moved to dismiss the Second Amended

9    Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 32.) The

10   Johnsons filed a timely opposition (ECF No. 36), to which the defendants have not replied.

11       The court finds this matter suitable for determination without oral argument. *See* Civ. L.R. 7-

12   1(b). For the reasons discussed below, the court denies the defendants' motion to dismiss the

13   negligence and Unfair Competition Law claims, and grants their motion to dismiss the

14   cancellation claim. Because it does not appear that the Johnsons can allege different facts that

15   would make the cancellation claim viable under the applicable law, that claim is dismissed with

16   prejudice.

17                                         **STATEMENT**

18       This discussion assumes familiarity with the court's earlier order dismissing the Johnsons'

19   First Amended Complaint. (ECF No. 29.) That order set out at length the Johnsons' factual

20   allegations describing their mortgage, their efforts to obtain a loan modification from defendant

21   PNC (who has represented itself as the servicer of the Johnsons' loan), and their ultimately

22   accepting a modification that they still find unaffordable. (*Id.* at 2-6.) Those allegations continue to

23   give a good description of the circumstances underlying this case. It is the Johnsons' legal claims,

24   rather than the facts, that have undergone the more marked change in the Second Amended

25   Complaint. Only two specific points need be made here.

26   **I.   THE ASSIGNMENT AND NOTICE OF DEFAULT**

27       The first is to recall the facts surrounding two documents related to the Johnsons' mortgage

28   loan: the assignment under which PNC claims to be the Johnsons' legitimate loan servicer; and a

United States District Court
Northern District of California

ORDER – 14-2976 LB                                                                              2

1    notice of default that PNC recorded against the Johnsons' loan. These are the documents that the

2    Johnsons challenge in their claim for statutory cancellation of instruments. (*See* ECF No. 30 at 9-

3    18, ¶¶ 35-64.)

4        In January 2013, invoking California's Homeowner Bill of Rights ("HBOR"), the Johnsons

5    sent PNC a demand for proof that PNC was the authorized servicer on their loan. (2nd Am.

6    Compl. – ECF No. 30 at 12, ¶ 45.) PNC responded by sending the Johnsons various documents.

7    (*See id.* at 13, ¶¶ 46, 48.) Among these was an "un-endorsed certified true and correct copy of the

8    [mortgage] Note." (*Id.* at 13, ¶ 46.) PNC also sent the Johnsons an "Assignment of Deed of Trust"

9    that "recited and sought to transfer [the original mortgage lender] Commonwealth['s] . . . interest

10   in [the Johnsons'] Deed of Trust to 'Banc of America Funding Corporation Mortgage Pass-

11   Th[r]ough Certificates, Series 2006-2 U.S. Bank National Association as Trustee, by PNC Bank,

12   National Association as Servicer with delegated authority under the transaction documents.'" (*Id.*

13   at 13, ¶ 48.) The assignment was executed by "PNC Bank, National Association, successor by

14   merger to National City Mortgage, a division of National City Bank." (*Id.* at 14, ¶ 49.)

15       The Johnsons allege that their original lender, Commonwealth, never assigned its interest in

16   the Note or Deed of Trust to anyone, including National City Bank of Indiana. (*Id.* at 12, 14, ¶¶ 44,

17   49-52.) Therefore, PNC lacked "apparent authority to assign the interest of 'National City Bank of

18   Indiana'" and failed to establish that any of the entities on the face of the assignment have an

19   interest in the property. (*Id.* at 14, ¶¶ 49-53.) The assignment is therefore void. (*Id.* at 14, ¶ 52.)

20   The Johnsons also allege that the assignment was "robosigned without reliance on competent or

21   reliable evidence to substantiate the right to foreclose," in violation of California Civil Code

22   § 2924.17(b). (*Id.* at 17, ¶ 61.) Instead, the Johnsons allege, PNC "had the assignment created in

23   order to create its own evidence, which was knowingly without basis in truth and that PNC did

24   record the assignment illegally." (*Id.*)

25       The Johnsons further allege that PNC has recorded a notice of default against their property.

26   (*Id.* at 12, ¶ 42.)

27   ///

28   ///

United States District Court
Northern District of California

## II. THE SINGLE POINT OF CONTACT — MISCALCULATING THE JOHNSONS' INCOME

The Second Amended Complaint adds a discussion of a PNC employee, whom the Johnsons call "Josh," who was assigned as a "single point of contact" to oversee their loan-modification application. (*Id.* at 4, 8-9, ¶¶ 15, 31-32.) The Johnsons allege that they called Josh to explain that, in working out a possible modification, PNC had miscalculated their income, overstating that income by 10%. (*Id.*) This error led to a monthly mortgage payment "several hundred dollars higher than what plaintiffs can afford." (*Id.* at 8, ¶ 31.) According to the Johnsons, Josh "acknowledged" the error. (*Id.* at 4, ¶ 15.) He promised to look into the problem and call them back. (*Id.*) But he never did. (*Id.* at 4, 8, ¶¶ 15-16, 31.) The Johnsons allege that Josh, though nominally their single point of contact, "did not have the authority" to correct the mistake. (*Id.* at 8, ¶ 31.) The mistake was not corrected.  (*Id.* at 4, 8, ¶¶ 15-16, 31.) This caused the Johnsons' modified monthly payment to be "unaffordable" to them, and to run afoul of PNC's own loan-modification guidelines. (*See* ECF No. 36 at 2, 6-7.)

### ANALYSIS

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

United States District Court
Northern District of California

In considering a motion to dismiss, a court must accept all the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id*. at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). When a party repeatedly fails to cure deficiencies, however, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

# I. NEGLIGENCE

## A. PNC Had a Duty to Handle the Johnsons' Modification Application With Reasonable Care

PNC challenges the Johnsons' negligence claim on two grounds. It first argues that, under California law, it had no duty to the Johnsons "in the servicing of the loan, including [the] loan modification." (ECF No. 32 at 5-6.) It then argues that the increased monthly payments that the Johnsons tie to PNC's overstating their income states no legally cognizable injury. (*See id.* at 6.) The court disagrees on both heads.

The court's previous order did not address the question of duty; it held that the Johnsons' negligence claim failed for other reasons. (ECF No. 29 at 8-11.) PNC correctly writes that the relationship between lenders and borrowers does not traditionally create a duty that will support a California negligence claim. (ECF No. 32 at 4-6.) Lenders generally do not owe borrowers a duty of care unless their involvement in a transaction goes beyond their "conventional role as a mere lender of money." *See, e.g.*, *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991). Still, "*Nymark* does not support the sweeping conclusion that a lender never owes a duty of care to a borrower." *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 945 (2014). A duty may arise even where the lender remains within its "conventional role" of

United States District Court
Northern District of California

merely loaning money. *Id.* Deciding whether a lender owes a duty in a given case requires a court to "balanc[e]" the "non-exhaustive" factors set forth in *Biankaja v. Irving*, 49 Cal.2d 647, 650 (1958). *E.g., Alvarez*, 228 Cal. App. 4th at 945-46 and n. 5.

The ground shifted with the passing of HBOR. It is true, as PNC points out (ECF No. 32 at 5-6), that lenders have no obligation to offer "loss mitigation" options such as loan modifications; if they do offer them, moreover, they are not bound to offer their borrowers any "particular" loss-mitigation "result." *See* Cal. Civ. Code § 2923.4(a). That same § 2923.4(a), though, compels lenders who offer loss-mitigation options to "ensure" that borrowers "have a meaningful opportunity to obtain" such mitigation. *Id.* That is a core "purpose" of HBOR, *id.*, and, in large part, what its specific requirements seek to guarantee.

The California Court of Appeals has thus held that, particularly in light of HBOR, once a mortgagee undertakes to consider a loan-modification request, it owes the borrower a duty to use reasonable care in handling that request. *Alvarez*, 228 Cal. App. 4th at 945-52. The *Alvarez* court considered existing California law, and the requirements of and policies behind HBOR, and it held that, once a lender agrees to consider a loan modification, "the *Biankaja* factors clearly weigh in favor of a duty." *Id.* at 948. The court thus reversed the "no duty" dismissal of a negligence claim. *Id.* at 945-52.

*Alvarez* shares salient features with this case. There, too, the plaintiffs complained that the lender had negligently mishandled their modification request by relying on "incorrect information" — specifically, as the Johnsons allege here, by miscalculating their income. *Id.* at 945. Like the Johnsons, the *Alvarez* court pointed to the lender's obligation under HBOR to appoint a "single point of contact" to oversee and effectively manage a borrower's loan-modification request. *Id.* at 950. The obligation to discharge those SPOC responsibilities and, more specifically, to avoid errors or correct those that arise, the court held, "fall well within the duty to use reasonable care in the processing of a loan modification." *See id.* at 951.

*Alvarez* followed this district's pre-HBOR decision in *Garcia v. Ocwen Loan Servicing, LLC*, 2010 WL 1881098 (N.D. Cal. May 10, 2010). *Alvarez*, 228 Cal. App. 4th at 948-49. That case too "found that the *Biankaja* factors weigh in favor of imposing a duty of care on a lender that

undertakes to review a loan for potential modification." *See id.* at 948 (discussing *Garcia*). A mounting number of federal cases have followed *Alvarez* and *Garcia* to hold that, in light of HBOR, lenders have a duty to exercise reasonable care in handling loan modifications. *Shapiro v. Sage Point Lender Servs.*, 2014 WL 5419721 (C.D. Cal. Oct. 24, 2014) (denying motion to dismiss negligence claim); *Segura v. Wells Fargo Bk., N.A.*, 2014 WL 4798890 (N.D. Cal. Sept. 26, 2014) (same); *Penermon v. Wells Fargo Bk., N.A.*, 2014 WL 2754596 (N.D. Cal. June 11, 2014) (same). The undersigned too has previously reached the same conclusion. *Rowland v. JPMorgan Chase Bk., N.A.*, 2014 WL 992005 (N.D. Cal. Mar. 12, 2014); *Rijhwani v. Wells Fargo Home Mtge., Inc.*, 2014 WL 890016 (N.D. Cal. Mar. 3, 2014).

The court continues to agree with the reasoning in these cases. Once PNC offered the Johnsons an opportunity to modify their loan, it owed them a duty to handle their application with ordinary care. The Johnsons have sufficiently alleged facts that support a duty in negligence.

### B.  Increased Monthly Payments Constitute Sufficient Injury

The Johnsons locate their injury — under both their negligence and their UCL claims — in the increased monthly payments that, they allege, followed from PNC's overstating their income. (2nd Am. Compl. – ECF No. 30 at 4-5, 8, ¶¶ 13-16, 18-21, 31-33.) They allege that they brought the error to the attention of one of the PNC employees who was designated as their SPOC, that this person acknowledged the mistake, and that he did not fix it. (*Id.* at 4, 8-9, ¶¶ 15-16, 31-33.) This mistake caused the modification that they were ultimately offered to carry a monthly payment "several hundred dollars higher than what plaintiffs can afford and qualified for." (*Id.* at 8, ¶ 31.) The Johnsons allege that this made their monthly payments "unaffordable"; they also claim that this caused the modification to run afoul of PNC's own modification guidelines. (*See id.* at 3-4, ¶¶ 12-16.)

PNC argues that this does not constitute actionable injury "because Plaintiffs are indisputably obligated to pay the loan." (ECF No. 32 at 6.) This seems to miss the point of the Johnsons' allegations. The plaintiffs' claim is that their modified monthly payments are higher than they would have been absent the mistake, and are unaffordable, and that this flowed directly from PNC's acknowledged but uncorrected mistake in calculating their income. Courts addressing

similar HBOR-related claims brought under California's Unfair Competition Law have found, without difficulty, that injuries of this sort are actionable. *E.g., Segura*, 2014 WL 4798890 at *9. (The court discusses these decisions, below, in the context of the Johnsons' UCL claim.) There is no difference between the negligence and UCL theories that prevents the increased monthly payments from constituting actionable harm under both. The court will not dismiss the Johnsons' negligence claim on this basis.

The court offers one qualification. The court previously dismissed the Johnsons' claims, insofar as they alleged that PNC had "lost" their appeal. (*See* ECF No. 29 at 10-11, 13.) The court found this allegation plagued by uncertain causation and insufficiently concrete injury. (*Id.*) The Johnsons' new complaint again discusses the lost appeal (ECF No. 30 at 8, ¶ 30), but they do not defend it in their opposition to PNC's motion to dismiss. The court continues to believe that the "lost appeal" claim does not state a viable claim, for the reasons previously given. What the court now finds viable, under both the negligence and Unfair Competition Law theories, is the charge that PNC miscalculated the Johnsons' income and thereby increased their modified monthly mortgage payments.

## II.  UNFAIR COMPETITION LAW — SINGLE POINT OF CONTACT

The Johnsons' second claim charges that PNC failed to appoint a "single point of contact" as HBOR requires. (ECF No. 30 at 6, ¶¶ 24-25.) This alleged failure then provides the ground for the Johnsons' claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. (*Id.* at 9, ¶ 34.) The Johnsons seek only an injunction under this claim. (*Id.*)

Section 2923.7 of HBOR provides that, when a borrower requests a foreclosure-prevention alternative, such as a loan modification, the servicer must promptly designate a "single point of contact" ("SPOC") to communicate directly with the borrower. Cal. Civ. Code § 2923.7(a). The SPOC can be an individual or a team, but must (among other things) possess sufficient knowledge about foreclosure alternatives, and have access to individuals who have the ability and authority to stop foreclosure proceedings.  *See id.* §§ 2923.7(b)-(d).  Moreover, "[t]he mortgage servicer shall

United States District Court
Northern District of California

ensure that each member of the [SPOC] team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process." *Id.* § 2923.7(e).[1]

The Johnsons allege that, while PNC appointed various people as their SPOC, in practice, no one was responsible for discharging — and no one actually discharged — the numerous duties that HBOR requires a SPOC to fulfill.(*See* 2nd Am. Compl. – ECF No. 30 at 6-7, ¶¶ 24-29.) Ultimately, the Johnsons complain, PNC shunted them to a "hotline"; the bank did not assign them a "true single point of contact." (*Id.* at 7, ¶ 28.)

Most saliently, the Johnsons describe an interaction with "Josh," who at some point was their designated SPOC. (*Id.* at 4, 8-9, ¶¶ 15, 31-32.) The Johnsons allege that they called Josh to explain that PNC had miscalculated their income, overstating that income by 10%. (*Id.*) This error led to a monthly mortgage payment "several hundred dollars higher than what plaintiffs can afford." (*Id.* at 8, ¶ 31.) According to the Johnsons, Josh "acknowledged" the error. (*Id.* at 4, ¶ 15.) He promised to look into the problem and call them back. (*Id.*) But he never did. (*Id.* at 4, 8, ¶¶ 15-16, 31.) The Johnsons allege that Josh "did not have the authority" to correct the mistake. (*Id.* at 8, ¶ 31.) The

---

[1] The SPOC is responsible for all the following:

(1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.

(2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.

(3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.

(4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.

(5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

Cal Civ. Code § 2923.7(b).

1    mistake was never corrected.  (*Id.* at 4, 8, ¶¶ 15-16, 31.) This caused the Johnsons' modified

2    monthly payment to be "unaffordable" to them, and to run afoul of PNC's own loan-modification

3    guidelines. (*See* ECF No. 36 at 2, 6-7.)

4         PNC's first challenge to the Johnsons' UCL claim is that the Johnsons' own allegations show

5    that PNC did indeed assign certain individuals, even "an entire team of individuals," as the

6    requisite SPOC. (ECF No. 32 at 7.) In other words, the fact that the Johnsons can complain about

7    the failings of their SPOC at all shows that PNC assigned personnel to that role. Hence there is no

8    viable SPOC-based UCL claim. (*See id.*)

9         The court disagrees. As the Johnsons write, PNC argues "that [it] complied [with the SPOC

10   statutes] simply because there were agents who identified themselves as" SPOCs. (ECF No. 36 at

11   6.) PNC misses both the implicit spirit and the express demands of the SPOC laws. It is not

12   enough that the Johnsons "were assigned" PNC personnel as SPOCs. (*See* ECF No. 32 at 7.) The

13   point of the Johnsons' allegations is that those people — even if labeled "SPOCs" and nominally

14   given the "responsibility" to "coordinate" and "track the status of" the Johnsons' application (*see*

15   *id.* at 7-8) — did not *in fact* carry out the substantive obligations that HBOR demands of SPOCs.

16   To this extent, PNC's argument is superficial and meritless.

17        As with the negligence claim, PNC also denies that the "higher" monthly mortgage payments,

18   which the Johnsons allege followed from PNC's overstating their income, do "not show economic

19   injury" that will support a viable UCL claim. (*Id.* at 8.) PNC couches this lack of injury as a failure

20   of standing under the UCL. (*Id.*) "Because the UCL is so broad," PNC rightly says,

21              California Proposition 64 imposed limitations on a private
22              individual's standing to sue under the law. *See Jenkins v. JP Morgan
                Chase Bank, N.A.* (2013) 216 Cal. App. 4th 497, 521-522.
                Specifically, to have standing, the individual plaintiff must show
23              both (1) economic injury and (2) that the economic injury was
                caused by the defendant's wrongful conduct. *Id*. at 522-23.
24
     (ECF No. 32 at 8.) That is true as far as it goes. Nonetheless, the law is not quite as PNC portrays
25
     it, and does not lead to the "no injury" conclusion that PNC suggests.
26
          Proposition 64 was not meant to effect a draconian reinvention of the accepted rules of
27
     standing, causation, and injury. It does not lay a chokehold on normally viable claims. Proposition
28

United States District Court
Northern District of California

ORDER – 14-2976 LB                                                                              10

1    64's purpose and effect were both understandable and more limited. The Supreme Court of

2    California has explained:

3           The intent of this change [*i.e.,* Proposition 64] was to confine
            standing to those actually injured by a defendant's business practices
4           and to curtail the prior practice of filing suits on behalf of clients
            who have not used the defendant's product or service, viewed the
5           defendant's advertising, or had any other business dealing with the
            defendant. . . .

6
     *Kwikset v. Superior Court*, 51 Cal.4th 310, 321 (2011) (quoted in *Shapiro*, 2014 WL 5419721 at
7
     *8). That change aimed only "to remove [UCL] standing for private litigants acting for the interest
8
     of the general public." *Shapiro*, 2014 WL 5419721 at *8 (citing *Segura*, 2014 WL 4798890 at *8).
9
     Even after Proposition 64, under current UCL standing requirements, where a plaintiff sues for
10
     harm allegedly committed by a defendant with whom the plaintiff has dealt, there remain
11
     "innumerable ways in which economic injury from unfair competition may be shown." *Kwikset*,
12
     51 Cal.4th at 323.
13
           Courts have thus held that the sorts of wrongs that the Johnsons allege constitute "economic
14
     injury" sufficient to yield a viable UCL claim. The court in *Segura*, for example, held that a
15
     plaintiff had "plainly" suffered economic injury, and thus had an actionable UCL claim, from a
16
     lost opportunity to obtain "lower monthly mortgage payments" through a loan modification.
17
     *Segura*, 2014 WL 4798890 at *9. It is a short step from *Segura* to conclude that the Johnsons'
18
     alleged "higher monthly payments" also state sufficient injury under the UCL. *Segura* further held
19
     that a UCL injury — sufficient to withstand a Rule 12(b)(6) challenge — lay in the plaintiffs'
20
     claim that their SPOC had been powerless to stop a foreclosure, even though the plaintiffs had met
21
     the requirements for halting it. *Id.* at *6. The Johnsons' claim that one of their assigned SPOCs
22
     acknowledged, but could not correct, PNC's error in calculating their income likewise constitutes
23
     sufficient injury to state a claim. The *Segura* court even held that "miscalculating Plaintiffs'
24
     eligibility for loan[-]modification programs" would alone suffice to state a UCL claim. *Id.* at *9.
25
     "No more is needed to state a claim," that court wrote. *Id.* (citing *Twombly*, 550 U.S. at 557). The
26
     Johnsons' central clam of injury at this stage is, again, that PNC miscalculated their income in
27
     devising their loan modification. Finally in this vein, the *Shapiro* court agreed that, at least in some
28

United States District Court
Northern District of California

1    situations, a notice of default "may" constitute adequate "economic injury" under the UCL.

2    *Shapiro*, 2014 WL 5419721 at \*8 (quoting *Woodring v. Ocwen Loan Servicing, LLC*, 2014 WL

3    3558716, \*9 (C.D. Cal. July 18, 2014) ("This Court agrees with the courts in this Circuit that have

4    on multiple occasions found that the initiation of foreclosure proceedings may suffice to establish

5    an injury under the UCL.")). PNC has written that a notice of default constitutes "a step in the

6    foreclosure process." (ECF No. 32 at 9.)

7         The Johnsons have stated a viable claim under the UCL. This claim is subject to the same

8    qualification as the negligence claim. The UCL claim cannot be based on the "lost appeal"; insofar

9    as it is viable, it derives from the alleged miscalculation of the Johnsons' income.

10   **III.    CANCELLATION OF INSTRUMENTS**

11        The Johnsons' final claim is for statutory cancellation of the assignment and notice of default

12   under California Civil Code section 3412. (2nd Am. Compl. – ECF No. 30 at 9-18, ¶¶ 35-64.) That

13   statute provides: "A written instrument, in respect to which there is reasonable apprehension that if

14   left outstanding it may cause serious injury to a person against whom it is void or voidable, may,

15   upon his application, be so adjudged, and ordered to be delivered up or canceled." Cal. Civ. Code

16   § 3412. The court previously dismissed this claim with leave to amend. (ECF No. 29 at 17-18.)

17        The Johnsons offer a better-focused argument on cancellation than they did the last time

18   around. They write: "The notice of default causes plaintiffs injury because it is a public record and

19   continues to ruin their credit." (ECF No. 36 at 8.) They also complain that the allegedly bogus

20   assignment wrongly empowered PNC to record that default. (*See* ECF No. 30 at 10, 17, ¶¶ 38, 62.)

21   There is "serious injury," in the Johnsons' view, in an unauthorized assignee casting shadows on a

22   fee owner's title. (*See, e.g.,* ECF No. 30 at 17, ¶ 62.) That argument is understandable. But it

23   continues to fail for the reasons set out in the court's earlier order, and expressed in *Nan Hui Chen*

24   *v. Deutsche Bk. Nat'l Trust Co.*, 2014 WL 2738071 (N.D. Cal. June 9, 2014).

25        First, nothing about the assignment or notice of default — or, more precisely, nothing about

26   the alleged infirmities in those documents — has altered the Johnsons' payment obligations under

27   their note or the substantive foreclosure rights that may be asserted against them after a default.

28   This is undisputed. Second, the Johnsons do not deny that they defaulted on their loan. It is not

United States District Court
Northern District of California

ORDER – 14-2976 LB

12

1    really the assignment, then, or its challenged provenance, that has stained their credit report. It is

2    the fact that they defaulted.

3        The plaintiff in *Nan Hui Chen*, too, sought to cancel (among other things) an allegedly false

4    assignment and notices of default. *Nan Hui Chen*, 2014 WL 2738071 at *5. The court dismissed

5    the cancellation claim for several reasons. Two are pertinent here. First, the court wrote: "[E]ven

6    accepting the allegation that the assignment of the deed of trust was improperly executed," it has

7    caused the plaintiff no "serious injury" within the meaning of § 3412 "because her obligations

8    under the note remained unchanged." *Id.* at *7 (citing *Simmons v. Aurora Bk., FSB*, 2013 WL

9    5508136 (N.D. Cal. Sept. 30, 2013) and *Fontenot v. Wells Fargo Bk., N.A.*, 198 Cal. App. 4th 256,

10   272 (2011)).

11       Second, the *Nan Hui Chen* plaintiffs lacked standing to challenge the putatively fraudulent

12   assignments between third parties. *Nan Hui Chen*, 2014 WL 2738071 at *7-*8. On this point, *Nan*

13   *Hui Chen* applied the "majority rule" in mortgage-securitization cases. *Id.* "The 'majority rule'

14   concerning a plaintiff's standing to bring such claims was articulated . . . in *Jenkins v. JPMorgan*

15   *Chase Bk., N.A.*, 216 Cal. App. 4th 497, 515 (2013), which 'rejected a plaintiff's attempt to rely on

16   alleged deficiencies in the securitization process to challenge subsequent assignments of the

17   promissory note.'" *Nan Hui Chen*, 2014 WL 2738071 at *7 (quoting in part *Apostol v.*

18   *CitiMortgage, Inc.*, 2013 WL 6328256, *6-*7 (N.D. Cal. Nov. 21, 2013)). "The *Jenkins* Court

19   noted that

20           because the assignment merely substituted one creditor for another,
             it did not affect a plaintiff's obligations under the note. [*Jenkins*]
21           therefore held that "a[ ]s an unrelated third party to the alleged
             securitization, ***and any other subsequent transfers of the beneficial***
22           ***interest under the promissory note, Jenkins lacks standing*** to
             enforce any agreements . . . relating to such transactions."
23
     *Nan Hui Chen*, 2014 WL 2738071 at *7 (quoting in part *Jenkins*, 216 Cal. App. 4th at 515)
24
     (emphasis added). "Even assuming that the subsequent transfers of the [plaintiff's] note were
25
     invalid," *Nan Hui Chen* continued,
26
             the plaintiff is not the victim of such invalid transfers because her
27           obligations under the note remained unchanged. Instead, the true
             victim may be an entity or individual who believes it has a present
28

1

> beneficial interest in the promissory note and may suffer the
> unauthorized loss of their interest in the note.

*Nan Hui Chen*, 2014 WL 2738071 at *7 (quoting *Jenkins*, 216 Cal. App. 4th at 515). According to *Nan Hui Chen*, courts in this district have unfailingly and "expressly declined" to adopt a different rule that would allow plaintiffs standing in such cases. *See Nan Hui Chen*, 2014 WL 2738071 at *8 (collecting cases). The parties' submissions do not address the point; but, from the Johnsons' complaint, it seems that the challenged assignment in this case was also made as part of a securitization involving the Johnsons' mortgage. (*See* ECF No. 30 at 13, ¶¶ 48-49.)

It is more than incidental that the cases that *Nan Hui Chen* cites in this regard were all decided after the January 1, 2013 effective date of HBOR. *See Nan Hui Chen*, 2014 WL 2738071 at *8.

This rule from mortgage-securitization cases dovetails with, and for present purposes may be restated as, the cancellation statute's requirement that the challenged instrument be void or voidable *against the party seeking to cancel it*. *See* Cal. Civ. Code § 3412. The Johnsons, in other words, do not allege a plausible case that the assignment is "void or voidable" against them. The basic logic beneath *Nan Hui Chen* applies: The Johnsons do not state a viable claim for the cancellation of an assignment between third parties. Nor, consequently, can they cancel the notice of default — whose claimed infirmity derives from that of the assignment.

Because the Johnsons' cancellation claim seems essentially at odds with the case law, and because the Johnsons have now had three opportunities to state a viable cancellation claim, it appears that no merely factual adjustments to that claim will save it. The cancellation claim is therefore dismissed with prejudice. *See Lopez*, 203 F.3d at 1127; *Ferdik*, 963 F.2d at 1261.

## CONCLUSION

The court grants in part and denies in part (ECF No. 32) the defendant's motion to dismiss the Second Amended Complaint. The court denies the motion as to the plaintiffs' claims for negligence and under the California Unfair Business Practices Act. The court grants the motion as to the claim for statutory cancellation. The latter claim is dismissed with prejudice.

This disposes of ECF No. 32.

///

///

United States District Court
Northern District of California

14

1      **IT IS SO ORDERED**.

2    Dated: February 12, 2015

3                                          _____

4                                          Laurel Beeler
                                           United States Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California