UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| CHARLOTTE JOHNSON, et al., | Case No. 14-cv-02976-LB |
| Plaintiffs, | |
| v. | **ORDER DENYING RECONSIDERATION** |
| PNC MORTGAGE, et al., | Re: ECF No. 80 |
| Defendants. | |

## INTRODUCTION

This case involves the allegedly botched modification of a home-mortgage loan. (*See generally* 2nd Am. Compl. – ECF No. 30.)[1] The court previously granted summary judgment, in the defendants' favor, against the whole of the plaintiffs' operative complaint. (ECF No. 78.) The court then entered a Rule 58 judgment and closed the case. (ECF No. 79.) The plaintiffs now move the court to reconsider its summary judgment. (ECF No. 80.) They move under both Fed. R. Civ. P. 59(a)(2) and 59(e) — but their motion is correctly treated under Rule 59(e). This matter can be decided without oral argument. *See* Civil L.R. 7-1(b). The court denies the plaintiffs' motion. The court finds the plaintiffs' reconsideration arguments without merit. This order addresses some of the plaintiffs' more central or overarching points.

---

[1] Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER (No.14-cv-02976-LB)

**GOVERNING LAW**

The plaintiffs ask the court to reconsider its summary-judgment decision. They couch their request both as a motion for new trial under Fed. R. Civ. P. 59(a)(2), and as a motion to alter, amend, or vacate the summary judgment under Fed. R. Civ. P. 59(e). (ECF No. 80 at 2.) The new-trial motion does not seem procedurally appropriate. Rule 59(a)(2) governs "Further Action After a Nonjury Trial." *See* Fed. R. Civ. P. 59(a)(2). There was no trial here. This case was disposed of through several motions to dismiss and, ultimately, on summary judgment under Rule 56. The appropriate procedural device for seeking reconsideration is thus Rule 59(e). *Taylor v. Knapp*, 871 F.2d 803, 805 (9th Cir. 1989) (motion for "reconsideration of summary judgment is appropriately brought under . . . Rule 59(e)"); *Huerta v. AT&T Umbrella Ben. Plan No. 1*, 2012 WL 6569369, *3 (N.D. Cal. Dec. 17, 2012) (same) (Rule 59(a)(2) is "procedurally improper" tool for seeking reconsideration of summary judgment).

"[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (*en banc*) (quoting 11 C. Wright *et al.*, *Federal Practice and Procedure* § 2810.1 (2d ed. 1995)). "A motion for reconsideration under Rule 59(e) 'should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed *clear error*, or if there is an intervening change in the controlling law.'" *McDowell*, 197 F.3d at 1255 (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (emphasis in *McDowell*)).

"It is well settled that an issue presented for the first time in a motion pursuant to Federal Rule of Civil Procedure 59(e) generally is not timely raised . . . ." *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 77 (D.D.C. 2013), *aff'd*, 782 F.3d 9 (D.C. Cir. 2015) (quoting *District of Columbia v. Doe*, 611 F.3d 888, 896 (D.C. Cir. 2010)); *see also, e.g., Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012) ("Rule 59(e) is not a vehicle to present a new legal theory that was available prior to judgment . . . ."); *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (same).

## ANALYSIS

**1. The lateness of the plaintiffs' "planned retirement" argument — Amendment — Dismissal with prejudice**

Several points may be grouped around the lateness of the plaintiffs' "planned retirement" argument. The plaintiffs first raised this theory in opposing summary judgment. The retirement theory did not appear in the Second Amended Complaint. Even the plaintiffs recognized this. (*See* ECF No. 69 at 8-9.) When they filed their summary-judgment opposition in April 2016, moreover, the pleading-amendment deadline of July 9, 2015 had long passed. (*See* ECF No. 44 at 2.) It is therefore less than persuasive for the plaintiffs to argue that PNC failed to meet its Rule 56 burden by not challenging the planned-retirement theory in its initial summary-judgment motion.

The court could have refused to consider on summary judgment theories that were not encompassed in the operative complaint. *See, e.g., Cole v. CRST, Inc.*, 2015 WL 9241331, *4 (C.D. Cal. Dec. 15, 2015) ("courts routinely hold that a plaintiff cannot oppose summary judgment based on a new theory of liability") (quotation omitted) (citing *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1292-93 (9th Cir. 2000)). Because PNC joined the issue in its reply brief, and because the court felt that it had sufficient material before it to do so, the court addressed the planned-retirement theory despite its being tardy; the court found that theory wanting.

The court did not "entirely overlook[]" the plaintiffs' request to again amend their complaint. (ECF No. 80 at 7.) The plaintiffs had already amended their complaint twice. (*See* ECF Nos. 18, 30.) Which of course means that, when the defendants moved for summary judgment, the plaintiffs were on their third complaint. All three had been winnowed by partly successful motions to dismiss. (*See* ECF Nos. 14, 29, 38.) With every dismissal, the court gave the plaintiffs leave to amend their complaint. (*Id.*) The summary-judgment motion in question was thus directed toward the residue of a third complaint. That residue did not pass muster under Rule 56. It is not the court's role to keep any lawsuit alive indefinitely. The court's job is to impartially apply legal rules to the claims and defenses that come before it. Those rules demand that, at some point, a plaintiff must advance a sufficiently fixed and minimally viable claim that the defendant did something wrong that harmed her. The plaintiffs in this case have shown an impressive elasticity; even

1  beyond the fully blown amendments to their complaint, they have repeatedly shifted theories to
2  elude the substantive arguments that undermined their analysis. Maybe that is understandable. But
3  it eventually ceases to be fair ball and, for reasons of finality and judicial economy, as well, where
4  multiple iterations, twists, and turns do not produce a legally viable claim, the metamorphoses
5  must end. *Cf. Kona*, 229 F.3d at 890 (reconsideration must be "used sparingly in the interests of
6  finality and conservation of judicial resources").

7  Especially given the plaintiffs' previous amendments, the court was within its authority to
8  dismiss with prejudice. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("A
9  district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has
10 previously amended.") (citing *Sisseton-Wahpeton Sioux Tribe v. United States,* 90 F.3d 351, 355
11 (9th Cir. 1996)).

### 2. That PNC "agreed" to receive retirement documents — "Imminent default" and the modification calculation

The plaintiffs' central argument now seems to be that, because PNC agreed to receive documents relating to Mrs. Johnson's impending retirement, and because (according to the plaintiffs) PNC considered the planned retirement in determining whether the Johnsons were at risk of "imminent default," PNC also had to consider the planned retirement when it calculated the modified monthly payment. (*See* ECF No. 83 at 2 [¶ 5].) More precisely, according to the plaintiffs, PNC had to address retirement under the HAMP Guidelines' temporary-income provisions. (*See id.*) There is therefore, in the plaintiffs' view, "clear error" in the court's decision that an undocumented, anticipated retirement does not make otherwise normal income into "temporary" or "bonus" income under the Guidelines, the cessation of which must be factored into a loan modification.

Further in this vein, the plaintiffs argue that "the burden [was] on PNC" to show that it requested more information about Mrs. Johnson's planned retirement if it felt that, without such information, the Johnsons' loan-modification request was "incomplete." (*Id.* at 2 [¶ 4].) But, the plaintiffs say, PNC did not show that it made such a request "in its summary[-]judgment motion." (*Id.* at 1-2 [¶ 4].)

There are numerous overlapping problems with this position. The court sets out several in laundry-list fashion.

First, the contention that PNC should have once again requested information from the Johnsons concerning the planned retirement is another late argument. Nothing prevented the plaintiffs from presenting this particular contention before judgment. They did not. It is therefore not a proper basis for vacating the judgment under Rule 59(e). *E.g., Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) ("A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.") (citing *Kona*, 229 F.3d at 890). Furthermore, it is undisputed that PNC did invite the Johnsons to send them information concerning the anticipated retirement — but, judging from the undisputed record evidence, the Johnsons never did. (The court discussed this in its earlier order. [ECF No. 78 at 2-3].) The Johnsons' present argument thus reduces to a claim that, when they failed to provide the requested information, "PNC should have asked again" (the term is the court's, not the Johnsons') — and that PNC can be held liable for not having done so. That position is not terribly convincing on its face, and the Johnsons have pointed to no authority suggesting how it provides a route past Rule 56. As for PNC not proving that it again requested retirement information "in its summary[-]judgment motion," the obvious answer is that retirement was not a theory that the Johnsons had advanced before their summary-judgment opposition — to say nothing of the ancillary version of that argument (that PNC should have asked for retirement information again) that they offer in their present reconsideration motion.

This particular new argument also assumes the correctness of other parts of the plaintiffs' analysis: mainly, their view that a wholly inchoate plan to retire can transform otherwise normal income into "temporary income" under the HAMP Guidelines so that a bank must account for it in calculating a loan modification — even in the absence of proof of what that retirement would mean, concretely, for a borrower's finances. But the court has already addressed and rejected that predicate argument. For one thing, the HAMP Guidelines do not expressly (or, in the court's view, even implicitly) provide for treating otherwise normal, regular income as temporary income. And the basic idea that a wholly inchoate, anticipated retirement can make normal wages "temporary,"

"sporadic," or somehow "non-traditional," is unconvincing and unworkable for the reasons given in the court's March 7th order.

Finally, going further in this vein — and remembering that it is the plaintiffs who have the ultimate burden to produce evidence of their claim — it is worth recalling that the *plaintiffs* adduced no concrete proof of what impending retirement would do to their income. Meaning, they generated no hard numbers showing what the post-retirement loan-modification calculation might look like. There is not even proof that the Johnsons told PNC *when* Mrs. Johnson expected to retire. There is no proof that they provided any such information to PNC for the bank to work from. Not only do the HAMP Guidelines not require a bank to consider this, but also, in this particular case, there is no proven basis for how PNC could have accounted for an anticipated retirement — to say nothing of what such a calculation *should* have entailed if it were not itself to create a basis for liability.

### 3. Reasonable reliance

The plaintiffs also argue that PNC "*agreed* to look at the retirement documentation, and [thus, the plaintiffs] could prevail under a reasonable reliance theory, even if PNC was not negligent under HAMP." (ECF No. 83 at 4 [¶ 9]) (emphasis in original).

The plaintiffs are again sliding among legal theories. And the defect in this particular argument is plain: Reasonable reliance is a concept from the law of fraud, and from that of promissory estoppel. *See, e.g., Thrifty Payless, Inc. v. Americana at Brand, LLC*, 218 Cal. App. 4th 1230, 1239 (2013) (fraud); *Errico v. Pac. Capital Bank, NA*, 753 F. Supp. 2d 1034, 1048 (N.D. Cal. 2010) (citing *Poway Royal Mobilehome Owners Ass'n v. City of Poway*, 149 Cal. App. 4th 1460, 1470 (2007)) (promissory estoppel). No fraud or promissory-estoppel claim is at issue in this case. Nor have the plaintiffs suggested how reasonable reliance relates to some concept that *is* involved here. Holding aside all other problems with this contention, moreover, the court is not inclined to find a jury issue based on seven conclusory words ("could prevail under a reasonable reliance theory"), that were raised for the first time in the reply brief to a reconsideration motion, and that are unconnected to a fuller analysis.

* * *

The court would end with a word on rhetoric and decorum. Plaintiffs' counsel should not mistake the court's disagreement with his arguments for partisanship. He should also be more alert to the tone and barbs he chooses to deploy. When his effort should have been focused solely on articulating a concise and cogent legal analysis, the plaintiffs' attorney found space and breath to suggest that,

- "the court's own feelings are to side with banks" (ECF No. 80 at 5);

- "the court, as if to ensure plaintiffs would never get to fairly litigate the retirement issue, overlooked Plaintiff's request to amend . . . ." (ECF No. 80 at 7);

- "The March 7, 2016 judgment is a patent endorsement of those antics"— "antics" described in a heated discussion on the preceding page (which generally implied that the court had favored PNC) (ECF No. 80 at 7-8); and

- "the court argues on Defendant's behalf . . . ." (ECF No. 83 at 3 [¶ 6].)

The court has looked past these remarks to deal with counsel's substantive arguments. But toxic rhetoric is never winning rhetoric. Certainly not when the poison is spat at the decision-maker. It does nothing to aid one's case. (Depending on the reader, it can do much to harm it.) Treating colleagues "respectfully" means more than just typing that word in the closing request for relief. *See generally, e.g.,* Civil L.R. 11-4(a)(3) ("Every member of the bar of this Court . . . must . . . [m]aintain respect due to courts of justice and judicial officers . . . .").

## CONCLUSION

The court denies the plaintiffs' post-judgment motion. This disposes of ECF No. 80.

**IT IS SO ORDERED.**

Dated: May 31, 2016

_____
LAUREL BEELER
United States Magistrate Judge

ORDER (No.14-cv-02976-LB)           7